## CALEB F. LINSLEY v. NOBLE LOVELY.

*Bills of Sale. Evidence. Custom or Usage. Principal and
Agent. Charge to the Jury.*

If a bill of sale expresses the contract of the parties, it can not be controlled by
parol evidence any more than any other written contract. But where the bills
of sale, as in the present case, simply state, that on a given day, the defendant
bought of the plaintiff certain articles, at given prices, with a memorandum on
the margin " six per cent off for cash," *it was held* that it did not import a con-
tract, and that it was simply *declaratory* of a fact, and the defendant can show
the true contract of the parties, consistent with those written declarations by
parol evidence.

And the words endorsed on the bills " six per cent off for cash," being equivocal,
it is competent to prove to the jury, how they are understood by a *custom* or
*usage* among men engaged in the same class of trade with the plaintiff.

If a witness, who is interested, as a member of a certain firm, in the event
of the suit, has executed a release of all claims, which he had as an indi-
vidual or a partner in the firm, the release is sufficient, and he is a competent
witness.

And where a witness, who was assignee of the defendant, had sold and conveyed
by covenants of warranty, a part of the real estate of the defendant, which had
been attached by plaintiff, and witness held in his own hands ample indemnity,
in case plaintiff recovers, out of which the judgment may be satisfied, his inter-
est is too remote to affect his competency.

And if a party call a witness, and have him sworn in chief, and examined, though
it be upon a question to the court touching the interest of another witness, still
this will exclude the party calling him from objecting to the opposite party's
examining him, upon the merits of the cause to the jury, for it is a waiver of
the interest of the witness, by the party so calling.

It is competent for a witness, who as agent negotiated a trade for the principal, to
testify how he understood the contract, at the time of the trade, as his under-
standing is the understanding of the principal; but it is not competent for him
to testify how the other party, or the agent of the other party understood the
contract, as this is the opinion of the witness, and a fact to be found by the
jury.

The office of a *custom* or *usage* is strictly one of *exposition*, and is allowable to be
given in evidence only as one means of arriving at the *intention* of the parties,
and can never be received to thwart it, when it is clearly and fully expressed.

The *custom* or *usage* set up in the present case, was, that there were a class of mer-
cantile houses in the city of New York, in the same general line of trade with
the plaintiff, that were generally known as " six months houses;" that by their
general and uniform course of business, a bill made out in the manner of plain-

Linsley *v.* Lovely.

tiff's bill to defendant, it would be understood to be a sale on six months' credit, without any express stipulation to that effect between the parties; that this usage may discharge the office of *exposition*; *it was held*, it must be found to be the *general usage* of the whole of that class of houses, in the city of New York, to which plaintiff belonged, and so well *established* and *uniformly acquiesced in*, and for such a length of time, that the jury might be fairly justified in inferring that it was known to the contracting parties, and that it entered into their minds and made, by *implication*, a part of their contract.

And if such a *custom* or *usage* is not fairly proved, it should be laid wholly out of the case; so too, if the offer is not to prove such a *custom* or *usage*, the evidence should be excluded.

If a clerk or agent in a store exceeds his general powers, by giving a credit to a customer, and the customer has no notice or knowledge of the fact, at the time, but acts in good faith, the principal will be bound by the act of his agent or clerk.

ASSUMPSIT for goods sold and delivered. Plea, the general issue, and trial by jury.

The plaintiff claimed to recover of the defendant the amount of two bills of goods, sold by him to the defendant on the second and fourth day of May, 1848, and the other on the seventh day of June following, both bills amounting to over eight hundred dollars.

That plaintiff was a silk and fancy goods merchant in the city of New York, and the defendant a merchant in Burlington. No question was made but what the goods were received by the defendant, and that the same had not been paid for; and the sole defence made, was, that the goods were sold on a credit of six months, which had not transpired, at the time this suit was commenced.

On the trial, the plaintiff proved that the first bill of goods was purchased by one Charles A. Goodrich, a clerk of the defendant, who was sent to New York by the defendant, to purchase goods; and that the other bill was purchased by a Mr. Draper, a merchant of New York, for the defendant, and at his request. That at the time of the sales of said goods, respectively, *bills* were made out and delivered with the goods, and the same were offered in evidence, the bill for the first purchase was as follows :

"New York, May 2, 1848.

Mr. Noble Lovely,

Bought of C. F. Linsley,
Wholesale Dealer in Staple and Fancy Silk Goods."
"Six per cent off for cash."

Here followed a list of articles and prices, footing at $812,85.

The plaintiff objected to the introduction of any evidence by defendant to show that said sales were on credit, claiming that said bills were the only evidence to show the terms of sale.

But the court overruled the objection, and decided that evidence aside from the bills was admissible, to show that the sales were on credit ; to which decision plaintiff excepted.

The defendant then proved that the prices in said bills, affixed to the several items, were what were called six months' prices, and such prices as other houses, as well as the plaintiff, sold the same goods for on a credit of six months, without interest, and that fact was not controverted by plaintiff. The defendant also offered the deposition of said Charles A. Goodrich, his clerk, which tended to prove that he bought the first bill of goods on a credit of six months, and that it was so understood at the time of the purchase. Those parts of the deposition, tending to prove that the goods were so bought, and that plaintiff, or his clerk so understood it, were objected to by plaintiff; the objection was overruled, to which decision plaintiff excepted.

The defendant also offered the deposition of Geo. G. Draper, who bought said last bill of goods; the plaintiff objected on account of interest in the event of this suit. And to show Draper's interest, he called one James W. Hickok, from whose testimony it appeared, that about the time this suit was brought, defendant failed, and that all his property, real and personal, was attached by plaintiff and other creditors, among whom were Draper, Aldrich, and Frink, of which firm witness, Draper, was a member ; that after said attachment, all the attaching creditors (except plaintiff) and the defendant made an arrangement to have all the property so attached, assigned to witness, Hickok, to be by him converted into money, and applied *pro rata* upon the claims of such creditors, as should come in under the assignment, to the extent of fifty cents on a dollar of their debts ; and if they received fifty cents on a dollar, they were to discharge their whole debts, and the overplus was to go to defendant. Said Hickok also testified, that if plaintiff should succeed in this suit, and collect his demand out of the property, there would not be sufficient to pay fifty cents on a dollar, &c. The court decided that said Draper was interested, and that his deposition could not be read. The defendant thereupon

produced a release from said Draper to said Hickok, by which he released all his personal interest, and all his interest as a member of said firm, in and to said property, &c.; the execution of the release was proved; and the defendant then offered another deposition of said Draper taken subsequent to the execution of said release. The plaintiff objected to the sufficiency of the release, and also to the deposition; but the court decided that said release made the witness competent, and admitted the deposition; to which plaintiff excepted.

The deposition of said Draper, together with the depositions of five other merchants of New York city, and the evidence of several country merchants, tended to prove that in the city of New York, there was a class of mercantile houses, in the same general line of trade with the plaintiff, that were generally known as "six months' houses;" that the general and uniform course of business in that class of houses, was to give a credit for six months; that their goods were marked, and bills made at six months' prices; and that by the general course of dealing in that business, in that city, if a bill of goods were purchased, and the bill made out in the manner of plaintiff's bills to defendant, it would then be understood to be a sale on six months' credit, without any express stipulation to that effect between the parties. All this evidence was objected to by plaintiff; but was admitted by the court, to which plaintiff excepted. The defendant also offered said Hickok as a witness; plaintiff objected on the ground of interest; objection overruled, to which plaintiff excepted. The said Hickok testified that he had sold and conveyed a part of the real estate, so attached by plaintiff and other creditors; but that the personal property in his hands was ample to satisfy plaintiff's judgment should he recover in this suit.

The plaintiff offered four depositions of Leonard Jarvis, who was his clerk or salesman, at the times the goods in question were sold, and he testified that no credit was given at the time of the sales, and that nothing was said, either by himself or said Goodrich about credit being given, and that he did not understand that he gave any credit, &c. The plaintiff also offered some six or eight depositions of merchants in the city of New York, and also several depositions of country merchants, which tended to disprove any such custom or course of business and dealing, as to

credit, as was claimed by the defendant. The plaintiff also relied upon these depositions to show, that by the general and usual practice of merchants in New York city, their clerks and salesmen are not authorized to sell goods upon a credit, without particular directions from their principals, though such practice was not universal, as clerks, who were considered especially confidential and trusty, were sometimes permitted to sell on credit, without consulting their employers. To show that this practice prevailed in plaintiff's house, plaintiff relied on the deposition of said Jarvis, and the depositions of four other persons, who had means of knowledge.

The defendant, to show that he was known to the plaintiff, offered evidence tending to show that the firm of Lovely & Hurlbut, of which he was a member previous to 1842, frequently purchased goods of the firm of Linsley & Nicholson, of which plaintiff was a member.

The plaintiff, on his part, offered evidence tending to prove that defendant had made no purchase of him from 1842, up to the time of the purchase now in question; and there was no other evidence upon this point on either side.

The plaintiff requested the court to charge the jury.

1. That in the absence of a special contract, or lawful usage to the contrary, the sales and delivering without payment, were sales for cash on demand, and that plaintiff would be entitled to recover.

2. That if Jarvis had a right to suppose from what took place at the sales, that they were for cash, and did so suppose, the sales were for cash, and the plaintiff was entitled to recover.

3. That the evidence of defendant as to the usage, claimed by him, both as to the construction of the bills, and the manner of obtaining a six months' credit, inspection of the forms of the bills, varied from and fell short of each usage claimed by the defendant, was not consistent with itself, and shows no uniform notorious and well settled practice or understanding, but modes of doing business in New York, which varied with houses, customs and circumstances, and that said evidence should be laid out of the case.

4. (If the evidence of defendant upon this point was such as should go to the jury,) that in order to find the customs claimed by defendant, they should find each to be uniform, generally known, well settled and notorious; and that if plaintiff's evidence

upon the subject of the customs should be believed, neither of the customs claimed existed.

5. That if at the time, by the uniform, well settled and notorious usage of the traders in New York, clerks had not the power of giving credit, or by the uniform and well settled practice or course of business in plaintiff's store at the time, his clerks had not the power to give credits, and on either of these sales nothing was said about a credit, or on the sale in May, a credit was stipulated for by said Goodrich, with either of plaintiff's clerks; a credit in that case was unauthorized and plaintiff should recover.

The County Court,—POLAND, J., presiding,—charged according to the first and second request of plaintiff; but as to the third and fourth request, the court charged the jury that the determination of the case must depend wholly upon what they should find was the real agreement or understanding between the parties, at the time of the sale; whether it was a sale for cash on demand, or upon a credit of six months. That the evidence in the case did not prove any such *distinct, fixed and general* custom to give credit in houses of the character of plaintiff's, as by force of the custom or usage, would make a sale which the law would characterize as *a cash sale*, or sale on *demand*, into a sale upon a credit of six months, (if such a custom could be good.)

The jury were told, however, that the course of dealing in that branch of trade in which the plaintiff was engaged, was proper to be considered by them, in reference to what was the actual agreement and understanding between the parties, provided the circumstances attending the transaction were such as to satisfy them that the ordinary course of dealing really formed the basis of the contract between the parties.

The jury were also charged that the bills of the goods sold by plaintiff to defendant, were also to be considered in the same view as to the real agreement between the parties, and also that the evidence upon both sides, as to the use and meaning of the bills in the mercantile community, and by the plaintiff and other merchants of his class in New York, should be weighed in connection with and as explanatory of the bills.

As to the plaintiff's 5th request, the Court charged the jury that if the plaintiff was actually present, and knew of the sale on credit, by his clerk Jarvis, to the defendant's agents, he would be

Linsley *v.* Lovely.

bound by the terms of the sale. The jury were also instructed, that if they found that plaintiff was in the habit of selling on credit, and Jarvis was employed by him as a salesman, and permitted to sell and did sell to the defendant on a credit, in the absence or without the knowledge of the plaintiff, the plaintiff would be bound by the terms of the sale, even if Jarvis exceeded his instructions in giving the credit, unless the defendant or his agent knew or had reasonable cause to know, that Jarvis was not authorized to sell on credit.

The jury returned a verdict for the defendant. The plaintiff excepted to so much of the charge of the court as is above detailed, and also to the various rulings of the court in the admission of evidence, as before stated.

*W. W. Peck* and *E. J. Phelps* for plaintiff.

I. The bill of sale was a contract. It contained all the elements of a contract; was accepted by defendant and signed by plaintiff; a contract is signed when it contains all the terms intended to be given to it and the party has affixed his name to it in such a manner as to show an intent to adopt it. It provides for no credit, and a new feature cannot be added to it by parol evidence.

Such instruments are always regarded as contracts within the operation of this general rule. Thus warranty cannot be shown by parol, where a bill of sale is given. This very point was decided in the case of *Davis & Aubin* v. *Bradley & Co.*, 24 Vt. 55. The following authorities show that the bill may be treated as signed. *Knight* v. *Crockfield*, 1 Esp. 190. *Saunderson* v. *Jackson*, 3 Esp. 180. *Welford* v. *Beazely et al.*, 1 Wils. 118. *Johnson* v. *Dodgson*, 2 M. & W. 653. *Plason* v. *Bailey et al.*, 14 Johns. 484. *Penniman* v. *Hartshorn et al*, 13 Mass. 87. 1 Greenl. Ev. 262, 267. 2 Starkie Ev. 341. *Phelps* v. *Stewart et al.*, 12 Vt. 258.

II. That part of Goodrich's deposition, where the witness says " *He* (Jarvis,) *understood that I was purchasing on credit. From the conversation we had in relation to my purchases of him, I understood, and I am perfectly confident that he understood, that if I purchased goods of him, Mr. Lovely for whom I purchased, was to have six months' credit,*" should have been rejected.

The question how Jarvis understood what was said, was for the jury. The witness should give the conversation or the substance

of it. Not its effect upon the mind of another. What took place, might or might not justify his conclusion.

This objection is very important. The deposition is *ex parte*, and is the most material evidence offered by the defendant.

III. Draper was improperly admitted as a witness. His release was only of his own interest in the claim of his firm, upon the funds in the hands of the assignee. Until all demands against his firm were paid, he could have no separate interest. And until that took place, his release would not bar his partners from collecting the whole. If they did collect it, he would of course be benefitted in the settlement of the partnership concern between the partners.

IV. The evidence of Hickok was improperly received. His interest was admitted, and the plaintiff did not waive the objection by calling him as a witness *to the court*, on the question as to the interest of Draper. A waiver is a voluntary act and cannot be extended beyond what is meant. The rule has never been applied, except where a witness has been called by the objecting party, to testify in relation to the issue.

V. The evidence to prove a usage that where goods are bought in New York, without anything being said as to time of payment, a right to six months credit is thereby acquired, should have been rejected. Such a custom would be unreasonable and absurd, and contrary to the policy of law as to trade and to the fixed legal import of the terms of the contract. And the objection is not relieved by what was said in regard to the usage in the charge. Plaintiff's evidence did controvert that his house was of the character of six months' houses. 6 Taunton 316. 2 Saund. 567. *Leach* v. *Perkins,* 5 Shepley 462. *Catlin* v. *Smith,* 24 Vt. 85. *Thompson* v. *Ashton,* 14 Johns. 316. 9 U. S. Dig. *123.*

VI. The charge on the subject of the usage was erroneous.

It involves a palpable contradiction. The court told the jury that the evidence did not establish a competent or legal usage, but that the usage so far as it was proved, might be considered in connection with the contract, and in view of the question whether the sale was made in reference to it.

It is a familiar rule that a custom or usage, even if proper in itself, cannot be regarded unless shown to be uniform, well settled,

Linsley. *v.* Lovely.

and so far notorious as to afford reasonable presumption that it is known to those concerned.

The whole evidence as to the usage should have been laid out of the case.

Or if left to the jury at all, it should have been with an explanation of its legal requisites, and the instruction to disregard it unless they found those requisites proved. And that if plaintiff's evidence was believed, they were not proved. *Bierne et al.* v. *Dodd,* 1 Selden 95.

VII. The charge as to the authority of the clerk to give credit, was erroneous.

If Jarvis was not authorized to sell on credit, and did so without the knowledge of his employer, the latter would not be bound unless he in some way affirmed the transaction.

And if notice to defendant of such want of authority were necessary, the usage restricting the powers of clerks in this particular, shown by the plaintiff, is reasonable and proper in itself, was fully proved, and should have been left to the jury as competent evidence of such notice.

*Geo. F. Edmunds* and *L. E. Chittenden* for defendant.

I. Parol evidence was properly received to show the stipulated time of payment. The bills of sale are silent upon the point; and even if we treat them as contracts, the proof as to the stipulated time, did not either vary, add to, or contradict their terms. It only supplied the truth upon the point in which the bills were silent: this is always admissible. But these bills are not contracts, or entitled to be treated as such. They are mere memoranda—evidence so far as they go of what has been contracted or done by the parties; but they do not exclude other evidence, of other terms in the contract of which they contain only a part. *Lockett et al.* v. *Nicklin,* 2 Exch'r Rep. 93 is in point. These bills contain intrinsic evidence of incompleteness, and do not therefore furnish even a presumption that payment was to be made immediately.

The phrase "six per cent off for cash," *ex vi termini* implies that the prices named in the bills are not cash prices. If they do not of themselves import a credit, these words raise such an ambiguity upon the face of the bills as will admit parol evidence to show the time of payment agreed upon when the goods were pur-

chased, and the usage of trade to show the import of such a bill. *Hart* v. *Hammett*, 18 Vt. 127. *Edwards* v. *Golding*, 20 Vt. 30. *Lowry* v. *Adams*, 22 Vt. 160. *Gibbon* v. *Young*, 4 Eng. C. L. 93. *Smith* v. *Wilson*, 23 Eng. C. L. 169.

II. The objections to Goodrich's deposition.

The portion of this deposition objected to is admissible in any view of the case; clearly so under the instructions given to the jury. If from what transpired at the time of the sale, Goodrich had the right to understand it as a sale on credit, and did in fact so understand it, the law will treat it as a sale on credit. If he and Jarvis understood it was a cash sale, the law will so treat it, although the purchaser would have had a right to treat it as a sale on credit. It was therefore proper for Goodrich to state not only what did transpire, but what his understanding of the contract was.

Where the contracting parties are witnesses, the *best* evidence is their own statement of what their understanding was. The objection is founded upon a verbal criticism which the language of the deposition will not justify. The meaning of the witness is, that Jarvis knew he was purchasing on credit, and that in making the purchase he, the witness, was buying on credit. The word "understood," as here used, is synonymous with "knew," "thought" or "believed," and if either of these words had been used, the deposition would not be subject to this objection.

But it is shown that this opinion was derived from the circumstances of the transaction in which he and Jarvis were the actors; and by the settled law of this State, his opinion or understanding, or whatever it may be called, as to the terms of the sale, derived from and founded upon these circumstances, is evidence. *Lester* v. *Pittsford*, 7 Vt. 158. *Morse* v. *Crawford*, 17 Vt. 499.

III. The interest of Draper, in the event of this suit, (if he had any,) depended on his right to compel Hickok to pay the fund to him if this suit failed. The release of Draper cuts off all claims of every nature, and in every right, which he or the firm had to the fund, so that in no contingency could he have any benefit from it. *Pierson* v. *Hooker*, 3 Johns. 70. *Bulkley* v. *Dayton*, 14 Johns. 387. *McBride* v. *Hogan*, 1 Wend. 326, 336. *Morse* v. *Bellows*, 1 N. H. 550, 567. *Rasinly et al.* v. *Ruddock*, Cro. Eliz. 648.

IV. Hickok had no interest in the event of the suit; because, 1. The verdict would not conclude or affect him. His liability

Linsley *v.* Lovely.

was remote and contingent. Such circuitous interest the law does not regard; the verdict and judgment must operate *directly* upon the witness. 2. The witness held full indemnity in his own hands with which to pay the judgment of the plaintiff, and it was thus indifferent to him how this suit should terminate. It is true that if the witness only had à *remedy over*, against some other person, his interest would exclude him; but here he holds the fund in his own hands for his own security. The distinction is broad, and is recognized in all the following cases. *Chaffee* v. *Thomas*, 7 Cow. 358. *McLeod* v. *Johnston*, 4 Johns. 126. *Lake* v. *Auburn*, 17 Wend. 18. *Briggs* v. *Crick*, 5 Esp. Cas. 99. *Carter* v. *Pearce*, 1 Term 163. *Allen* v. *Hawks*, 13 Pick. 79. 2 Rawle 279. But if he was interested, his testimony was still admissible. The plaintiff had called and used him on the same trial, and thus made him his own witness. The party, by calling, swearing, and using him, makes him *a witness in the cause*. He admits his competency and declares him to be worthy of credit. 2 Wend. 166, 200, 201. *Fulton Bank* v. *Stafford*, 7 Cow. 238. *Webster* v. *Lee*, 11 Pick. 269. *Morgan* v. *Bridges*, 5 Mass. 334. 3 Eng. C. L. 361. 1 Phil. Ev. 273. 1 Starkie Ev. 131.

V. The charge of the court on the 3d, 4th and 5th requests was clearly correct.

The evidence of the defendant, contained in his deposition, was offered, to show the actual basis of the contract of the parties, and this was the only effect given to it by the court.

The charge was in exact accordance with the 3d request. The court instructed the jury that no usage or custom was proved; and that they must decide upon the real contract of the parties made at the time; but that the usual course of dealing of the plaintiff and others might be considered by the jury in connection with the circumstances in finding what the contract was, provided they should find from the other evidence, that this course of dealing in fact formed the basis of the contract. This in substance required the jury to disregard the evidence entirely unless they believed that the parties themselves made the course of dealing proved by it, a part of the contract.

The case did not entitle the plaintiff to instructions according to the 5th request. The evidence tended to show that the plaintiff was present at the time of the sale by Jarvis. The court there-

fore properly charged the jury that if the plaintiff was present and knew of the sale on credit by his clerk, Jarvis, he would be bound by its terms. In other respects the charge on this point is subject to no legal objection.

The opinion of the court was delivered by

BENNETT, J.   The only question litigated in the court below, was whether the action was *prematurely* brought or not.   The questions raised upon the bill of exceptions, are somewhat numerous ; and have been discussed with much ability by counsel ; and it becomes the duty of the court to dispose of them, as far as the interest of the parties may require.

It is claimed by the plaintiff, that the bills of the goods sold and delivered to the defendant's agent, at the time of the sale, embody the contract, and preclude the introduction of parol evidence to show that the sales were made upon a credit of six months.   The bills simply state, that on a given day, the defendant bought of the plaintiff certain articles, at given prices, with a memorandum on the margin, " six per cent off for cash."   The bills are not subscribed by either of the parties ; but we do not put our decision on that ground.   If the bill of sale expresses the contract of the parties, it cannot be controlled by parol evidence any more than any other written contract.   But the bills of sale in this case do not import a contract ; and here is the error in the argument.

The bills were given, not to express a contract, but in consequence of one having been previously made ; and they are simply *declaratory* of a fact ; and out of this, with other things, a contract is to be made.   The question is not, whether the defendant can contradict any fact stated in the bills ; but whether he can show the true contract of the parties, consistent with those written declarations.   The case of *Ford* v. *Yates,* 40 Com. Law Rep. is perhaps the strongest case to be found in favor of the plaintiff's views on this question.   In that case, there was a written contract to deliver goods, and no time for the payment of them, mentioned in it ; and it was held, that the delivery and the payment were *contemporaneous* acts ; and that parol evidence was not to be received, to show that the payment was to be made at a future day.

The court in that case, assumed the ground, that the memorandum entered into by the broker, was a binding memorandum of

the contract of the *purchase* and *sale* under the statute of frauds; and it is only upon that supposition, that the case is to have weight as an authority. The cases in this state have all gone upon the ground that the bill of sale embodied a contract. *Lockett et al.* v. *Nicklin,* 2 Exch'r Rep. 93 is not, I apprehend, to be distinguished in principle from the case at bar; and in that case the parol evidence was received.

II. We think Draper was a competent witness after the execution of the release to Mr. Hickok. He released all claims, which he had, as an individual, or as a partner of Draper, Aldrich & Frink, upon the funds in the hands of Hickok.

It is a common principle, that where two or more have a *joint personal interest,* the release of one is the release of all, and bars the others. *Pierson* v. *Hooker,* 3 Johns. 70. *Bulkley* v. *Dayton,* 14 Johns. 387. In this latter case, the release was in form like the one in this bill of exceptions. It was a release by one partner of all right and claim as a partner; and yet its effect was held to be a discharge of the whole partnership debt.

III. We cannot see that Hickok had any certain interest in the event of this suit. He held the funds as the assignee of Lovely, as a mere stake-holder; and in regard to his interest, as it is said, growing out of the covenants of his deed of Lovely's real estate, it may be answered, that Hickok has a full indemnity in his hands, in case the plaintiff recovers, out of which the judgment may be satisfied; and it is a *non sequiter* that the plaintiff would even levy on the real estate, in case of a recovery, and thereby disturb the easements in Hickok's deed. In such a case, the interest of the witness must, at most, be contingent. *Enters* v. *Peres,* 2 Rawle 279.

Besides we think, that when he had been called as a witness, and sworn in chief and examined, though upon a question to the court touching the interest of another witness, still the party calling him, cannot object to the opposite party's examining him, upon the merits of the cause to the jury.

It is none the less a waiver of the interest of a witness by the party calling him, though called to lay the ground for the exclusion of another witness.

IV. So much of the deposition of Goodrich as goes to state how he "understood" the purchase to have been made, we think admissible. His understanding on that occasion was the understanding

of Lovely, his principal; and to determine what or when a contract is made, we must ascertain the understanding of each of the parties. The weight of this would be for the jury. When he states, how he is confident the contract was understood on the part of the plaintiff, and that he or his agent understood it to be a sale upon six months' credit, this is nothing but the opinion of the witness, and is one of the facts to be found by the jury, from the evidence in the case.

In admitting this part of the deposition there was, we think, error. If at the time of the sale, Goodrich had supposed that the plaintiff had understood the transaction to be a sale for cash, and had taken no means to correct the error, but perfected the sale with an intent to claim it to have been a sale upon a credit of six months, this might be important for the plaintiff; and doubtless he might prove it.

V. In regard to the *custom* or *usage*, we may remark, it can never be given in evidence, to *vary* or *control an express contract*; but its *office* is, to aid in ascertaining what the true contract of the parties was, and its nature and extent, which otherwise might be indeterminate and uncertain, arising from *implications, presumptions*, and acts more or less *equivocal.* The office of an *usage* is strictly one of *exposition*, and is allowable to be given in evidence as one means of arriving at the *intention* of the parties; and can never be received to thwart it, when it is clearly and fully expressed. The *usage* set up in this case, that it may discharge the office of *exposition*, must be found to be the *general usage* of the whole of that class of houses in the city of New York, to which the plaintiff belonged; and so *well established* and *uniformly acquiesced in*, and for such a length of time, that the jury might be fairly justified in inferring that it was known to the contracting parties, and that it entered into their minds, and made, by *implication* a part of their contract. If such an usage is not proved, it should be laid out of the case; and if the offer is not to prove such an usage, the evidence should be excluded. Nothing short of this will answer.

In the present case, there was, as the court below held, a failure to prove an usage, (which in most cases would be a question for the jury,) and the jury were directed to lay it out of the case, as an usage.

VI. We see no objection to the parol testimony to explain the

meaning of the words endorsed on the bills of sale, " six per cent off for cash," or to the charge of the court upon it. The words are of an equivocal character, and in such a case, it is competent to prove to the jury how they are understood by an usage among men engaged in the same class of trade with the plaintiff. 2 Cowen & Hill's notes to Phillips on Ev. 1418–19.

Though the usage was not proved, yet the court told the jury, " that the course of dealing in that branch of trade, in which the plaintiff was engaged, was proper to be considered by them, in reference to what was the *actual agreement* between the parties, providing the circumstances attending the transaction were such as to satisfy them, that the ordinary course of dealing really formed the basis of the contract of the parties."

We think there was error in this part of the charge, and that it was eminently calculated to mislead the jury. A general custom or usage must be proved before it can have effect, and it must be such a one as the law recognizes ; and unless such a one is offered to be proved, the evidence should be excluded ; and in this very case, if the offer had been to prove just what appeared on the trial, and no more, the court would, no doubt have excluded the evidence. It is difficult then to see how, " the course of dealing in that branch of trade," in the language of the charge, if an usage is not proved, can be taken into account by the jury, in determining what was the actual contract of the parties. We think the charge in effect, is, that though the usage was not proved so as to make it evidence, tending to prove a sale upon an implied credit of six months, yet, still it was so far proved that it might be weighed by the jury in determining what the contract was.

If the evidence does not prove a general usage, it cannot be received as *an item* in the testimony, as tending to show in connection with other testimony, the true contract of the parties ; and we think the plaintiff was entitled to a charge, that the evidence of the usage was not such, as should affect him, as any proof that the parties intended the sale in question to be a credit sale.

The case of *Beirne* v. *Dowd*, in the court of appeals in New York, 1 Selden 95, has a close analogy in principle with this case, and we think, that case was well decided.

If the evidence had showed that it had been the *uniform* and *unvaried custom* of this plaintiff himself, to sell his goods upon a

credit of six months ; and that this was known to the defendant, at the time he purchased, it would have been quite another question, whether this should have gone to the jury, as evidence tending to prove an *implied* credit.

The charge of the court in other respects, we see no objection to.   The bills, and the testimony relative to the meaning of the words endorsed upon them, was properly for the jury, and was submitted to them upon the correct principle.

We think there was evidence tending to prove that the plaintiff might have been present at the time of the sales by the clerk, and if so, he could not complain that the clerk exceeded his authority.   Besides, if not present, the clerk is to be regarded as the general agent of the plaintiff, and if he exceeded his authority in selling upon a credit, the plaintiff must be bound by it, if neither the defendant nor his agent was chargeable with notice of the extent of the authority of the agent.

For the reasons assigned, we must regard it as a mis-trial, and the judgment is reversed.