EUNICE Y. COMSTOCK'S ADMR. *v.* ABE JACOBS.

February Term, 1915.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed May 15, 1915.

*Executors and Administrators—Actions by—Witnesses—Incompetency—Waiver—Effect at Subsequent Trial—"Law of the Case"—Impeachment of Witnesses—Foundation—Necessary as to Deponents—Evidence—Admissibility—Declarations — Res Gestae — Exceptions — Waiver—Transcript—Necessity on Review.*

While it may be that an executor or administrator, suing or defending in behalf of a decedent's estate, can, without waiving the adverse party's statutory incompetency as a witness, call him to testify to a matter that arose since the appointment of such executor or administrator, or, in case of necessity, to identify letters or other documents, preparatory to offering them in evidence, yet by calling the adverse party and examining him in regard to any material transaction with decedent, such executor or administrator waives

the witness's incompetency and makes him competent as a general witness in the case on all relevant matters, notwithstanding No. 64, Acts 1908.

The decision of this Court, on a bill of exceptions in an action of general assumpsit by an administrator for money had and received by defendant from intestate, that plaintiff, by calling defendant as a witness and examining him, waived his statutory incompetency and made him competent as a general witness in the case, became the "law of the case" to the extent of fixing his status as a witness in subsequent trials of that case.

History of our legislation in modification of the common law as to the competency of witnesses reviewed, and *held* that now competency is the rule, and incompetency the exception, and that the provisions of P. S. 1589-1590, disqualifying the "other party" to testify in his own favor when one of the original parties to the contract or cause of action in issue and on trial is dead, or when an executor or administrator is a party, operate as a limitation or exception.

Where the record does not show the ground of exceptor's objection to the admission of evidence, and the evidence was admissible for any purpose, error does not appear.

The rule requiring a foundation to be laid for the impeachment of a witness does not apply to deponents.

In assumpsit by an administrator for money received by defendant from intestate and which defendant claimed he received under a contract with intestate to take care of her and her husband during their lifetime, which he claimed he did, but plaintiff claimed that the money was received only for investment for intestate, and plaintiff testified that at plaintiff's house, shortly after intestate and her husband went to live with defendant, he said that they were hiring board of him, and then asked whether there was some way he could get their property, and what the law was as to the disposition of decedents' property, whereupon plaintiff referred defendant to the Public Statutes, which defendant then and there examined, and defendant admitted examining those statutes at plaintiff's house, he was entitled further to testify that the only occasion when he looked into a law book in plaintiff's house was in connection with another matter, and to state the reason he then examined the statutes, although that reason was not then expressed. *Norton's Admr.* v. *Perkins,* 67 Vt. 203, distinguished.

In assumpsit by an administrator for money received by defendant from intestate, and which defendant claimed he received under a

contract with intestate to take care of her and her husband during their lifetime, defendant was properly allowed to show by his wife that when she was three years old she went to live with intestate and her husband; that witness lived with and was reared by them till she was about 18 years old; that her relations with them were friendly; that she called them father and mother and was treated by them as their daughter.

Where excluded evidence was offered to meet designated testimony that the record does not show was given, its admissibility for that purpose will not be considered on review.

A ground stated below for the admissibility of offered evidence, which is not briefed by the exceptor, is waived.

Grounds for the claimed admissibility of excluded evidence, which were not stated below, will not be considered on review.

In order to make admissible in evidence, as part of the *res gestae*, a declaration that would otherwise be mere hearsay, or a mere self-serving declaration, there must be a principal fact or transaction that is in issue, or relevant to the issue, and which is. also equivocal, and the declaration must grow out of a fact or transaction of that quality, serve to illustrate or explain its character, be contemporaneous with it, derive some credit from it, and be offered only to qualify and explain it, and as wholly subsidiary and appurtenant thereto.

Declarations received as part of the *res gestae* are not independent evidence, and so are not admissible if offered as evidence of the fact asserted.

In assumpsit by an administrator for money received by defendant from intestate, and which defendant claimed he received under a contract to care for her and her husband during their lifetime, where plaintiff's witness, the overseer of the poor, testified that while intestate and her husband were living at defendant's house under that contract, as he claimed, witness went there to investigate their financial condition and to ascertain what they had done with their property, fearing lest defendant would get it all and leave them town charges, his further testimony that while there the husband told him that they had not given away their property for support, but were living at defendant's house under a contract for board, offered on the ground that, as intestate and her husband were then living at defendant's house, his declaration that he was boarding there was a declaration accompanying and explaining the act of his

living there, as resting on a contract for board and not for support, was properly excluded.

In such action, where plaintiff, for the purpose of showing that intestate and her husband had not given defendant all of their property for support, as he claimed, introduced evidence tending to how that intestate, while living at defendant's house, made a present of $50 to defendant's daughter, and defendant testified that the gift was so made, but that it was really his money, he was properly allowed to put in evidence, as corroborative of his testimony and in connection therewith, a check for $50 payable to his daughter, indorsed by him for her, and bearing evidence of having been cashed at a nearby bank and finally paid by the bank on which it was drawn.

Where the transcript of the proceedings below is not furnished this Court, but the bill of exceptions refers to it and makes it controlling in respect of an exception to certain argument of counsel, and there is nothing showing the language of the argument, except a meager statement in the bill of exceptions, the exception will not be considered.

Where a bill of exceptions clearly shows that the trial court intended that the transcript, and not the bill of exceptions, should be taken as the basis of an exception, the exceptor must produce the transcript or secure a satisfactory agreement that dispenses with it.

GENERAL ASSUMPSIT. Plea, the general issue. Trial by jury at the June Term, 1914, Orange County, *Fish*, J., presiding. Verdict and judgment for defendant: The plaintiff excepted. This case has been twice before in the Supreme Court; see 84 Vt. 277, and 86 Vt. 182.

*John W. Gordon, Earl R. Davis* and *W. H. Sprague* for the plaintiff.

*David S. Conant, Frank S. Williams, R. N. Harvey* and *Stanley C. Wilson* for the defendant.

TAYLOR, J. This is the third time this case has been here. The first opinion, *Comstock's Admr.* v. *Jacobs*, 84 Vt. 277, 78 Atl. 1017, Ann. Cas. 1913 A, 679, contains a full statement of the facts which were not materially different on the last trial below, and so need not be repeated. For the report of the second hear-

ing of the case see *Comstock's Admr.* v. *Jacobs,* 86 Vt. 182, 84 Atl. 568.

1.   Defendant was a witness in his own behalf and, against the objection that he was incompetent to testify to the contract as the other party thereto was dead, was permitted to testify that he made a contract with the Comstocks for their life support for which he was to have all their property.  Plaintiff had introduced no living witness to such a contract and his rebuttal evidence tended to show that no such contract was ever made. Plaintiff had not called defendant as a witness at this trial. When the case was first here it appeared that the plaintiff, in his opening case, called the defendant as a witness and examined him at length relative to the contract made by him with the Comstocks under which he received all their property, and also as to the amount of money and property received by him from plaintiff's intestate in her lifetime.  On the facts certified by the judge who presided at the trial, this Court then held that the plaintiff, by calling the defendant as a witness and examining him as he did, waived the statutory incompetency and made him competent as a general witness in the case.  *Comstock's Admr.* v. *Jacobs,* 84 Vt. 281, 78 Atl. 1017, Ann. Cas. 1913 A, 679.  It is now claimed that when plaintiff called the defendant as a witness at the first trial he only inquired of him concerning Mrs. Comstock's bank book, and the judge presiding at the last trial states in the bill of exceptions now before us that it appeared that at a previous trial the defendant had been used as a witness by both parties, but the plaintiff had only used him as a witness concerning the bank book of Eunice Y. Comstock.

No question is made but that the record when the case was first here showed as stated in that opinion.  The decision on the facts then certified up settled the competency of the defendant as a witness in his own behalf and became the law of the case to the extent of fixing his status as a witness in the subsequent trials.  *Cowles* v. *Cowles' Est.,* 81 Vt. 503, 71 Atl. 191.  The waiver of defendant's incompetency as a witness having thus been established, it could not be impeached at a subsequent trial without falsifying the record of the former trial.  That record must stand as no steps were taken to have it corrected on a rehearing.  But the exception could not be sustained if the question were an open one.  It is generally held that when an executor or administrator, suing or defending on behalf of a de-

cedent's estate, calls the adverse party and examines him in regard to transactions with the decedent, he thereby waives the statutory incompetency of the witness and makes him competent as a general witness in the case. Note to *Comstock's Admr.* v. *Jacobs*, Ann. Cas. 1913 A, 682 and cases cited; *Paine* v. *Mc-Dowell et al.*, 71 Vt. 28, 41 Atl. 1042; *Ainsworth* v. *Stone*, 73 Vt. 101, 50 Atl. 805; *Dee* v. *King*, 77 Vt. 230, 59 Atl. 839, 68 L. R. A. 860; *Cowles* v. *Cowles' Est.*, 81 Vt. 498, 71 Atl. 191; *Green's Admr.* v. *Mason et al.*, 84 Vt. 289, 79 Atl. 48; *Linsley* v. *Lovely*, 26 Vt. 135.

The bank book, concerning which plaintiff examined the defendant, was the principal subject-matter of the controversy. The time of the transaction to which this testimony related is not stated; but it must have been during Mrs. Comstock's lifetime, as the bank book had been transferred to the defendant and the deposit collected by him several months before her death. By calling the defendant and examining him as to this matter plaintiff waived the benefit of the statute and the defendant became a competent witness in his own behalf on all relevant matters. The justice of this rule is too apparent to require extended argument. It would be most unjust to require the defendant to admit having received the bank book and its proceeds and deny him the opportunity to explain how he came by them. Upon the defendant's theory of the case the transfer of the bank book was one of several facts making up a whole transaction. Having called the defendant as a witness to one of the constituent facts, plaintiff could not object, on any just ground, to his testifying to the whole. To sustain his objection would be to countenance his occupying inconsistent positions. For the protection of the estate which the plaintiff represents, the statute denied the defendant the right to testify in his own behalf. The plaintiff was at liberty to insist upon or waive the benefit of the statute as seemed to him best for the interests of the estate. He could keep the door shut, if he chose to do so; but he could not open it, so far or so long as suited his own purposes, and then close it. Once open it remains open until the end of the litigation.

It may be that plaintiff could have called the defendant as a witness to some fact without waiving his incompetency to testify generally; as to testify to some matter arising since his appointment as administrator, (*Merchants' Loan & Trust Co.* v. *Egan*, 222 Ill. 494, 78 N. E. 800), or in case of necessity to

identify letters or other documentary evidence preparatory to offering them in evidence, (*Garrus et al.* v. *Davis et al.*, 234 Ill. 326, 84 N. E. 924; *Stevens et al.* v. *Moulton*, 68 N. H. 254, 38 Atl. 732). But these and similar cases are to be regarded as exceptions to the general rule that by using a disqualified witness a party waives the right to object to his competency later.

Plaintiff contends that our decisions on this question have all proceeded on the ground that the party calling the witness has examined him generally on the question in issue. This is a misinterpretation of our holdings. While such was the situation in some cases, and so there was no occasion in the particular case to go further than that, we have no decision holding that, in order to waive the disqualification, it is necessary that the examination of the witness relate to the contract in issue. In some of the cases the rule we now announce was unmistakably forecasted.

Plaintiff also argues at some length that *Linsley* v. *Lovely, supra,* does not bear upon the present question; that, as it relates to waiver of incompetency on account of interest, it is not an authority for our decisions based upon it where the question was waiver of incompetency due to the death of the other party. The force of *Linsley* v. *Lovely* as an authority becomes apparent when we consider the successive steps by which the law applicable to the case has developed. At common law no person interested in a cause could be admitted to testify in favor of that interest. *Carr* v. *Cornell,* 4 Vt. 118. Prior to 1852 a party situated like the defendant was denied the right to testify not because the other party to the transaction was dead but because of interest. By No. 13, Acts of 1852, all objection arising from interest, whether as party or otherwise, was removed (*Smith* v. *Potter,* 27 Vt. 308, 65 Am. Dec. 198) and a party was given the right to compel the adverse party to testify in his behalf.

*Linsley* v. *Lovely* arose before the Act of 1852. The Court then held that a party who called a witness who was disqualified because of interest and examined him upon a question to the court touching the interest of another witness could not object to his being examined by the other party upon the merits of the cause to the jury. It was said that by so doing the party calling him waived the right to object to his competency. So long as the Statute of 1852 remained in force unamended the fact that one of the parties to a transaction was dead did not affect the

right of the living party to testify. To guard estates of deceased persons from the apprehended danger of allowing the survivor when the other party was disabled by death to meet and explain such testimony, the Legislature saw fit to restrict the effect of the Statute of 1852 by engrafting thereon provisos relating to such cases. *Fitzsimmons* v. *Southwick,* 38 Vt. 514. These provisos first appeared in the revision of 1863 (G. S. Ch. 36, §24) and covered what is now P. S. 1589 to 1591. An exception was thus carved out of the old disqualification of interest, and, within a limited scope, the discarded rule was restored. See 1 Wig. on Ev. §578. The main object of the statute was to remove and not to create disqualifications; and the provisos operate as a limitation or exception, so that competency is the rule and incompetency the exception. See *Hopkins Tr.* v. *Sargent's Est.,* 88 Vt. 217, 92 Atl. 14; *Lytle* v. *Bond's Est.,* 40 Vt. 622. Within their scope the provisos restore the disqualification that existed at common law. Thus it is seen that *Linsley* v. *Lovely* is full authority for the several decisions in support of which it is cited.

Plaintiff attempts to distinguish this from our cases holding a waiver, but the case is not distinguishable. Cases cited from other jurisdictions do not require extended notice. They depend largely on the wording of the local statutes. No case has been called to our attention that disagrees with the general proposition stated above, and the law applicable to this question is too well settled in our decisions to make a review of the decisions in other states upon dissimilar statutes at all profitable.

2. Plaintiff testified that the defendant, at plaintiff's house shortly after the Comstocks went to live with the defendant, said that they were hiring their board of him; and then asked if there was not some way he could get their property. Plaintiff testified further that the defendant asked him what the law was about the disposition of deceased person's property, upon which he referred the defendant to the Public Statutes, a copy of which was in the house; and that the defendant then examined the statutes in relation to that matter. The testimony of plaintiff's daughter, Mrs. Toussant, given by deposition, tended to corroborate the plaintiff. Defendant admitted examining the statutes at the plaintiff's house, but, subject to plaintiff's objection and exception, was permitted to testify that the only occasion when he looked into a law book at plaintiff's house was in

connection with another matter. Subject to objection and exception he was also permitted to state the reason why he examined the statutes. It did not appear that this reason for so doing was communicated to anyone at the time. Defendant claimed the right to give his reason on the ground that it might tend to impeach Mrs. Toussant, or that it might tend to show that she was mistaken as to the occasion. The court received the evidence without confining it to impeachment. No foundation for impeachment of Mrs. Toussant was laid in her cross-examination, although defendant was represented by counsel at the taking of her deposition.

The ground of objection is not stated in the exceptions and the purpose for which the evidence was received does not appear. In these circumstances, if the evidence was admissible for any purpose, we cannot hold that it was error to receive it. If a wrong use of it was subsequently made, it would present another question not raised here. *Roxbury* v. *C. V. R. Co.,* 60 Vt. 121, 14 Atl. 92; *Fairbanks* v. *Stowe,* 83 Vt. 155, 74 Atl. 1006, 138 Am. St. Rep. 1074; *Jenness* v. *Simpson,* 84 Vt. 139, 78 Atl. 886; *Londonderry* v. *Fryor,* 84 Vt. 298, 79 Atl. 46. Plaintiff's objection now made that the evidence was inadmissible as impeaching testimony, as no foundation had been laid, is without merit. The rule requiring foundation for impeachment is not applicable to witnesses who testify by deposition. *Downer* v. *Dana,* 19 Vt. 338; *Robinson* v. *Hutchinson,* 31 Vt. 443; *Billings* v. *Metropolitan Life Ins. Co.,* 70 Vt. 477, 41 Atl. 516.

Apart from the question of impeachment, which we do not consider, the testimony was admissible as tending to explain defendant's conduct. Plaintiff's testimony was to the effect that as a result of the conversation concerning the Comstocks the defendant examined the statutes. Defendant having admitted looking into the statutes on an occasion, the circumstance unexplained made weight for the plaintiff. Defendant was entitled to give his version of the occasion for doing this.

*Norton's Admr.* v. *Perkins,* 67 Vt. 203, 31 Atl. 148, relied upon by the plaintiff, is not to the contrary. There, plaintiff was permitted to give his reason for not visiting his father, the intestate, while living at the defendant's. This was held not to be relevant to any issue and the reason being of a character calculated to prejudice the defendant, it was error to receive it. Here, plaintiff having first introduced evidence tending to show

a reason for an admitted act favorable to himself, the defendant's testimony as to his reason for the act was relevant and material. The fact that the reason was not communicated to anyone at the time does not affect the admissibility of the evidence, though it might affect its weight.

3.   Defendant was permitted to show by his wife under exception that she went to live with the Comstocks when about three years old; that she was brought up by and lived with them until she was about eighteen years old; that her relations with the Comstocks were friendly; that she called them father and mother and was treated by them as their daughter.   The ground of objection to this evidence was that it could have nothing to do with the claimed contract for support nor be an inducement thereto, because the defendant's whole evidence tended to show that the contract was made solely with him because he had treated the Comstocks better than anybody else and because they liked the Jewish race.   A similar question was raised when the case was last here (86 Vt. 185, 84 Atl. 568) and was then, as it must be now, ruled against the plaintiff.   It was then held that the circumstances surrounding these parties and their former dealings, together with their previous relations, were admissible under the rule that, on the question whether a person did a particular thing or not, the character of the subject-matter and the circumstances affecting the relations of the parties to that subject-matter, affect the probability of the thing in question having been done as claimed.   Plaintiff now contends that, because the defendant stated in cross-examination a reason why the property was given to him, he was precluded from showing any other inducement.   It nowhere appears that defendant stated that the reason given was the sole reason; besides, the testimony objected to was entirely consistent with the reason defendant gave.   The fact that their foster daughter had married a Jew would help to explain their friendliness to the Jewish race.   The question is substantially the same as when here before and so is not now an open one.

4.   Plaintiff called as a witness one C. A. Washburn, who was overseer of the poor for the town of Corinth in 1907, and offered to show by him, in substance, that in the summer of 1907, after the Comstocks came to live at the defendant's house, he called there to investigate as to their financial condition and to ascertain from them what they had done with their property;

that he did this as a public officer because there was danger of the defendant's getting the Comstocks' property, leaving them town charges; that witness saw Mr. Comstock who told him they had not given away their property for support but were living at the defendant's house under a contract for board. The evidence was offered (1) to meet the evidence introduced by defendant of Mr. Comstock's declarations that he and his wife had turned over all their property to the defendant for their support; and (2) on the ground that as Mr. Comstock was then living at the defendant's house, his declaration that he was boarding there was a declaration accompanying and explaining the act of his living there, as resting upon a contract for board and not for support. The evidence was excluded, to which plaintiff excepted. The case does not show that the defendant had been permitted to prove Mr. Comstock's declarations against interest; besides, plaintiff waives the exception as to the first ground of his offer by failing to brief it.

Plaintiff argues that the evidence should have been received because it was a declaration made to a public officer in the discharge of his duties, relied and acted upon by such officer. We do not consider what, if any, merit there is in this claim, as no such question was raised on the trial. It was not then claimed that witness's official character affected the admissibility of the declaration.

In support of his exception as to the second ground of the offer plaintiff relies upon the rule that declarations accompanying acts may sometimes be received in evidence, although in their nature self-serving. He argues that the declarations made while Mr. Comstock was living at the defendant's characterized the act of living there and for that reason were admissible. It is well to notice at the outset that the rule invoked does not admit all declarations that happen to be made at the time of an act, even if the act itself can be proved. Mr. Wigmore mentions the following limitations to the use as evidence of declarations offered as part of a transaction:

1. The conduct to be characterized by the words must be independently material to the issue. 2. The conduct must be equivocal. 3. The words must merely aid in giving legal significance to the conduct. 4. The words must accompany the conduct. 3 Wig. on Ev. §1772. An unimportant or unequivocal fact cannot be made the vehicle to introduce a self-serving decla-

ration.  See *Fife & Child* v. *Cate*, 85 Vt. 431, 82 Atl. 741; *Patten* v. *Fergerson*, 18 N. H. 528.  Upon this subject Mr. Wigmore says: "Calling an assertion a part of a transaction cannot make it any less hearsay testimony when it is used assertively and testimonially, no matter how inseparable from or intimately connected with the affair it may be.  It is important to observe the vital distinction between the testimonial and non-testimonial use of language, for its neglect has been the root of fallacy and the source of the whole confusion.  To admit hearsay testimony simply because it was uttered at the time something else was going on is to introduce an arbitrary and unreasoned test and to remove all limits to principle."  3 Wig. on Ev. §§1757, 1775.

The general tests of admissibility of declarations accompanying acts, to be found in our decisions, are as follows: There must be a principal fact or transaction in issue or relevant to the issue.  Then, only such declarations are admissible as grow out of the transaction, serve to illustrate its character, are contemporaneous with it and derive some credit from it.  The act itself must be equivocal, that is, require elucidation or explanation, and the declaration must be of the character to give definite significance to the equivocal conduct by supplying the missing part.  To be admissible under this rule the declaration must not only be a part of the transaction but must also be offered to qualify and explain the transaction, the use of the words being wholly subsidiary and appurtenant to the act.  *State* v. *Ryder*, 80 Vt. 422, 68 Atl. 652; *Fife & Child* v. *Cate*, 85 Vt. 431, 82 Atl. 741; *Hopkins* v. *Heywood*, 86 Vt. 488, 86 Atl. 305, 49 L. R. A. (N. S.) 710; *State* v. *Howard*, 32 Vt. 404; *Holbrook* v. *Murray*, 20 Vt. 528.

The credit that the act gives to the accompanying declaration as a part of the transaction, and the tendency of the declaration to explain the act, distinguish this class of declarations from mere hearsay.

Declarations received as part of the transaction are not independent evidence and are not admissible if offered merely as proof of the fact asserted.  *Derby* v. *Salem*, 30 Vt. 722.

If the contemporaneous act is not equivocal, and so there is no missing link to be supplied, or if the declaration is offered merely to establish the existence of a fact or to strengthen other proof of its existence, it is a naked declaration, depending for its effect upon the credit of the person making it, and so mere

hearsay. *Elkins* v. *Hamilton et al.,* 20 Vt. 627; *State* v. *Daley,* 53 Vt. 442, 38 Am. Rep. 694; *Corder* v. *Talbott,* 14 W. Va. 277; *Lund* v. *Tyngsboro,* 9 Ark. 42.

Thus it appears that the true inquiry is whether the accompanying transaction is relevant and whether the declaration is offered for the purpose of illustrating, explaining or interpreting the transaction of which it is itself a part.

A test that is frequently applied and may be found helpful in many cases is whether or not the transaction is speaking through the declarant. Are the facts talking through the party or is the party talking about the facts? If the latter, the declaration is mere narrative and not admissible. 1 Elliott on Ev. §548; *Indianapolis St. Ry. Co.* v. *Whittaker,* 160 Ind. 125, 66 N. E. 433 and cases cited. Mr. Wharton says: "The *res gestae* are the act talking for itself, not what people say when talking about the act." 1 Whar. on Ev. §259. It was said in a comparatively recent case in Alabama: "Did the main act, *proprio vigore,* further assert itself and demonstrate its character or intent by impelling the contemporaneous or subsequent declaration or act offered in evidence, and without which the main act is left incomplete and only partially proved; or did the declaration or circumstance offered as *res gestae* originate from some other cause extraneous of the main act? If traceable to the main act as the producing cause, and the declaration or circumstance is illustrative of the main act, it is *res gestae;* otherwise it is mere hearsay." *Louisville R. Co.* v. *Pearson,* 97 Ala. 211, 12 So. 176. Such declarations "are admissible as incidents of the principal act, and because they are part of it and necessary to explain its character." *Insurance Co.* v. *Mosely,* 8 Wall. 412, 19 L. ed. 437. They "must be so intimately interwoven or connected with the fact or event which they characterize as to be regarded a part of the transaction itself." *Lander* v. *People,* 104 Ill. 248.

Assuming that the fact of Mr. Comstock's living with the defendant under some arrangement was relevant to the issue between the plaintiff and defendant and that the act was equivocal, so that his declarations tending to characterize his living there might be admissible if offered for that purpose, still, tested by the foregoing rules, it is evident that the offer was properly excluded. The declarations were not offered to elucidate or explain Mr. Comstock's act. In effect they were offered as proof of the facts asserted in the declaration and as such were mere

narrative. They did not arise naturally and spontaneously from the act of living there so as, in any true sense, to be part thereof and derive credit therefrom. They were prompted by the overseer's inquiries and were open to the suspicion that the motive for making them was a desire to quiet his fears. The circumstances disclosed in the offer do not save the declarations from the hearsay rule. See *Comstock's Admr.* v. *Jacobs,* 86 Vt. 188, 84 Atl. 568.

5. For the purpose of showing that plaintiff's intestate had not as he claimed given defendant all of her property for her support, plaintiff introduced evidence tending to show that the intestate while living at the defendant's house made a present of fifty dollars in cash to defendant's daughter, Rena Jacobs. Defendant in his own behalf testified that Mrs. Comstock did make the gift, but that he let her have the money; that it was really his money, but the little girl understood that it was a gift from Mrs. Comstock. To corroborate his testimony he produced his personal check on the Bradford National Bank for fifty dollars payable to Rena Jacobs and indorsed by him for Rena Jacobs. The intestate's name appeared nowhere on the check. Plaintiff objected to its introduction on the ground that the check did not show that Mrs. Comstock had anything to do with it. The check was admitted, to which plaintiff excepted.

The check, which was referred to and made part of the bill of exceptions, bears evidence that it was cashed at the National Bank of Orange of Chelsea, Vermont, and that in due course it was paid by the Bradford National Bank. Taken in connection with defendant's testimony, the check had some force as corroborative evidence. The objection went to the weight rather than the admissibility of the evidence, and the check was properly received in corroboration. The burden of plaintiff's argument is that the admission of the check amounted to receiving a self-serving declaration. The check was not offered nor received as independent evidence, but was to be weighed in connection with defendant's testimony. It stood the same as book entries or memoranda which are properly received in connection with a witness's testimony for the purpose of corroboration. *Jaquith Co.* v. *Shumway's Est.,* 80 Vt. 561, 69 Atl. 157; *Stillwell* v. *Farwell,* 64 Vt. 286, 24 Atl. 243.

6. Plaintiff excepted to certain argument of defendant's counsel. On this question the exceptions refer to the transcript

and make it controlling. Plaintiff has not "furnished the transcript and there is nothing before us from which the language of the argument can be ascertained beyond the somewhat meager statement in the bill of exceptions. The fact that the court referred to the transcript upon this question alone clearly indicates an intention to have the question ruled upon the precise language of the argument. When the transcript is referred to and made controlling so much of it at least as is material to a question for review may become essential to a perfected bill of exceptions. While the parties may sometimes dispense with the transcript by an agreement as to what it would show, or, by mutually treating the statements of the bill of exceptions as sufficient may tacitly admit that they accord with the transcript, when the accuracy of the statement in the bill is called in question, or the bill makes it clear that the trial court intended that the transcript and not the bill should be taken as the basis of an exception, to present the question properly the excepting party must produce the transcript or secure a satisfactory agreement that dispenses with it. See *Hathaway* v. *Goslant,* 77 Vt. 199, 59 Atl. 835; *Green* v. *Dodge,* 79 Vt. 73, 64 Atl. 499; *Fraser* v. *Blanchard & Crawley,* 83 Vt. 139, 73 Atl. 995, 75 Atl. 797; *Wellman* v. *Carpenter,* 86 Vt. 491, 86 Atl. 497; *Davis* v. *C. V. Ry. Co.,* 88 Vt. 460, 92 Atl. 974. The question sought to be raised by this exception is not properly before us and so is not considered.

*Judgment affirmed.*