# HIRAM NORTON'S ADMINISTRATOR

### v.

## JOHN PERKINS.

#### October Term, 1894.

*When different instruments should be read together.    Eject-
ment for failure to support.    Evidence.
Fraud in grantor no defence.*

1. Where the grantee, upon receiving a deed of real estate, exe-
cutes, to give effect to the contract in pursuance of which
the deed was made, a written instrument specifying that
the grant is upon condition that the grantee shall support
the grantor for life, the two instruments should be read to-
gether, and the writing not under seal will have exactly
the same effect upon the legal title conveyed by the deed as
though it were written into that instrument.

2. In such case the grantor may maintain ejectment for a non-
compliance with the conditions expressed in the writing
not under seal.

3. In case of a conveyance of property conditioned for life sup-
port, the value of the property may be shown as bearing
upon the character of the support to be furnished, where
the conditions leave that indefinite.

4. Where it is understood that the support is to be furnished
upon the premises, and the parties have entered upon the
fulfilment of the contract, the fact that the grantor, after an
absence of some time, returns and receives his support
without complaint, is evidence tending to show a waiver
of any previous breach of the conditions.

5.  If the defendant was bound to furnish the support only on the premises, evidence that he did not support the intestate while absent is inadmissible.

6.  Error in the admission of testimony is not cured by the fact that later in the trial the one introducing it claims no benefit from it.

7.  What the intestate did and said while absent from the premises would have no tendency to show a breach of the conditions.

8.  Neither did the fact that the plaintiff, who was a son of the intestate, refused to visit his father at the defendant's house because defendant was a man of bad disposition, have such tendency, and was not admissible.

9.  That the intestate made this conveyance in fraud of his creditors, or fraudulently concealed from the defendant the fact that he was then owing debts, would be no defence in this action of ejectment for a breach of the conditions.

10. A record of a criminal proceeding which recites that complainant averred that six turkeys had been stolen from him and that the respondent had found the same, and that the respondent was arraigned upon this charge and convicted of the same, does not show that he was convicted of a crime, for it is not a crime to find stolen property.

Ejectment. Plea, the general issue. Trial by jury at the December term, 1893, Addison county, MUNSON, J., presiding. Verdict for the plaintiff to recover the possession of the premises and one cent damages. The defendant excepts.

September 4, 1889, the plaintiff's intestate conveyed to the defendant the premises in question, and upon the same day gave him a bill of sale of certain personal property which was on the premises. The deed contained the usual covenants of warranty "subject to certain mortgages which the said Perkins is to assume." Upon the same day, and in pursuance of the contract in virtue of which the deed and bill of sale were executed, the parties signed the following agreement :

"Whereas, I, Hiram Norton, of Addison, in the county of Addison, and state of Vermont, have this day given a

warranty deed of my home farm in said Addison, together with a bill of sale of certain articles of personal property to John Perkins, of Crown Point, N. Y., upon the condition that the said John Perkins, his heirs, executors or administrators shall furnish me a good support in sickness and health during my natural life, meat, drink, clothing, lodging, spending money, doctors' bills paid, suitable horse, harness and buggy or cutter, for me at all times seasonable to drive and use, all of which if well and faithfully done, the said property to vest in and belong to the said John Perkins or his heirs, executors or administrators.

"Witness our hands, this September 4th, 1889.

HIRAM NORTON.
JOHN PERKINS."

This agreement was made as one of the instruments necessary to carry out the contract which the parties had entered into, and was executed at the same time with the other two instruments. The three were recorded in the land records of the town of Addison.

The plaintiff claimed that the last writing was to be read in connection with the deed, and as a part of it, and that inasmuch as the defendant had not complied with the conditions therein expressed, he, as the representative of the intestate, was entitled to recover the possession of the premises. The defendant insisted that the third writing was to be read by itself, and that inasmuch as there had been before the beginning of the suit no re-entry or demand for possession, the plaintiff was not entitled to recover, even though there had been a breach of the conditions of that instrument. The court held that the deed and writing should be construed as one instrument, and that the plaintiff was entitled to recover if there had been a breach of the conditions. To this ruling of the court the defendant excepted.

As bearing upon the character of the support to be furnished the intestate, the plaintiff was allowed to show, sub-

ject to the exception of the defendant, the value of the real and personal property so conveyed.

It appeared from the testimony of the plaintiff that it was the understanding of the defendant and the intestate that the intestate should be supported upon the premises; that in pursuance of this agreement the defendant and his family moved onto the premises soon after the execution of the deed, and the intestate took up his home with them, and continued to reside there until sometime in the month of June, 1890, when he left, taking with him his horse and carriage; that the intestate remained away, stopping at various places until April, 1891, when he returned to the defendant's; that he then remained with the defendant until the last of August, 1891, when he again left, not returning until November 4, 1891; that he then remained upon the premises until April 12, 1892, when he once more left, and never returned. The intestate deceased in April, 1893. When not residing with the defendant upon the premises he lived with his relatives for the most part in the near vicinity.

Against the exception of the defendant, the plaintiff was allowed to show that while so absent from the premises the defendant did not contribute to the support of the intestate.

The plaintiff was the son of the intestate, and the intestate resided at his house a considerable portion of the time after the conveyance of the property when not residing with the defendant. The plaintiff testified that he did not visit the intestate at the house of the defendant, and was further allowed to state against the exception of the defendant as follows:

"Q. Why didn't you visit your father while he was at Mr. Perkins'?

"A. Well, for several reasons; the greatest reason why I didn't is because I don't think he is a man of very good disposition, and he isn't a man that I wish to associate with anyway."

The Mr. Perkins referred to was the defendant.

It appeared that the plaintiff at the time of the conveyance was indebted to various parties in considerable sums, and the evidence of the defendant tended to show that he, defendant, had no knowledge of this fact, and that the intestate represented to him that he had no debts of any amount, except the mortgage resting upon the real estate.

The defendant requested the court to instruct the jury that they were at liberty to infer from the fact that the intestate returned to the home of the defendant November 4, 1891, that being the last time he returned to the defendant's house, and accepted his support for a considerable period thereafter, that he had waived any breach of the condition which might have occurred previous to that time, and that if so waived it could not afterwards be set up as a forfeiture.

The defendant also requested the court to instruct the jury that if the intestate was indebted September 4, 1889, to various persons, as the testimony tended to show, and if he concealed the fact of such indebtedness from the defendant, and fraudulently represented to him that no such indebtedness existed, that would be a defence to this action, and the plaintiff could not recover. These instructions the court declined to give, and the defendant excepted.

With reference to what use the jury were entitled to make of the testimony in reference to the absence of the intestate from the home of the defendant, the court gave the following instruction :

"You are not at liberty to infer from the mere fact that Hiram Norton went away that there was a breach of the contract on the part of the defendant. But you are entitled to consider, in connection with the direct evidence as to the support and treatment he received at the defendant's, the circumstances under which he was living there, the circumstances under which he left there, the circumstances under which he remained away, and the circumstances under which he returned from time to time, as bearing upon the question of breach. You may draw from the facts which you find to be proven such inferences as are

justified by the common experiences of men; but you are not at liberty to indulge in surmises not founded upon the evidence."

The defendant excepted to so much of this portion of the charge as related to the circumstances under which he remained away, and the circumstances under which he returned from time to time, as bearing upon the question of the breach.

*Stewart & Wilds* for the defendant.

The written conditions did not so form a part of the deed that the plaintiff can treat a failure to comply with them as a forfeiture of the defendant's right under the deed. His remedy is not at law, but in equity. No case can be found in which it has been held that a defeasance executed upon a separate paper, although at the same time, was available in an action at law. 4 Kent, Com., 129; Hob., 125; 2 Comyn's Digest, 629; 2 Bl., Com., 327; *Fowell* v. *Forrest*, 2 Saund. 48; 1 Devlin, Deeds, s. 21; Tiedman, R. P., s. 303; 2 Wash., R. P., 445; *Kelleran* v. *Brown*, 4 Mass. 443; *Flint* v. *Sheldon*, 13 Mass. 447; *Cutler* v. *Dickinson*, 8. Pick. 388; *Bodwell* v. *Webster*, 13 Pick. 413; *Flagg* v. *Mann*, 14 Pick. 479; *Eaton* v. *Green*, 22 Pick. 530; *Murfey* v. *Calley*, 1 Allen 108; *Bean* v. *Mayo*, 5 Greenl. 87; *Jewett* v. *Bailey*, 8 Greenl. 246; *Warren* v. *Lovis*, 53 Me. 463; *Lund* v. *Lund*, 1 N. H. 89; *Runlett* v. *Otis*, 2 N. H. 167.

Ejectment will not lie upon a mere equitable title. *Dewey* v. *Long*, 25 Vt. 564; *Buck* v. *Gilson*, 37 Vt. 653; *Cady* v. *Sanford*, 53 Vt. 636; *Hammond* v. *Alexander*, 1 Bibb. (Ky.) 333; *Davis* v. *Hulett*, 58 Vt. 90.

No forfeiture can be had for a breach once waived. *Brewin* v. *Farrell*, 39 Vt. 206; *Hubbard* v. *Hubbard*, 97 Mass. 188.

*Hard & Bliss* for the plaintiff.

The three written instruments having been executed at the same time and for the purpose of effectuating the same contract, should be read together as though one.  Bish., Cont., s. 852 ; *Gibson* v. *Seymour*, 3 Vt. 565 ; *Whitney* v. *French*, 25 Vt. 663 ; *Graham* v. *Stevens*, 34 Vt. 166; *Olcott* v. *Dunklee*, 16 Vt. 478 ; *Raymond* v. *Roberts*, 2 Aik. 204 ; *Strong* v. *Barnes*, 11 Vt. 221 ; *Reed* v. *Field*, 15 Vt. 672 ; *Rogers* v. *Bancroft*, 20 Vt. 250 ; *Tittemore* v. *Ins. Co.*, 20 Vt. 546 ; *Wing* v. *Cooper*, 37 Vt. 178.

So read, the papers constitute a grant upon a condition precedent, and the grantee acquired no title except upon a performance of that condition.  *Lamb* v. *Clark*, 29 Vt. 273 ; *Olcott* v. *Dunklee*, 16 Vt. 478 ; *Dunklee* v. *Adams*, 20 Vt. 415, 422 ; *Tracy* v. *Hutchins*, 36 Vt. 225.

The value of the property conveyed was properly shown as bearing upon the consideration of the contract.    2 Phil., Ev., 353, (Ed. 1849) ; *Pierce* v. *Brew*, 43 Vt. 292.

ROSS, C. J.   The intestate and defendant, September 4, 1889, to effectuate a contract then entered into, executed and delivered three written instruments.   Over the intestate's signature, under seal, he executed a warranty deed to the defendant containing the usual covenants, except against a · mortgage resting on the premises, and, over his signature, without seal, he executed a bill of sale of certain personal property to the defendant.   Then signed by both was an instrument which reads :

"Whereas, I, Hiram Norton, of Addison, in the county of Addison, and state of Vermont, have this day given a warranty deed of my home farm, in said Addison, together with a bill of sale of certain articles of personal property to John Perkins, of Crown Point, N. Y., upon the condition that the said John Perkins, his heirs, executors or adminis-

14

trators shall furnish me a good support in sickness and health during my natural life, meat, drink, clothing, lodging, spending money, doctors' bills paid, suitable horse, harness, and buggy or cutter, for me at all times seasonable to drive and use, all of which if well and faithfully done, the said property to vest in and belong to the said John Perkins or his heirs, executors or administrators."

The writings were on separate papers, but all placed on record in the town clerk's office. The defendant does not contend that if the writing, expressing the condition, can be read as a part of the deed and contract, the title to the farm ever passed to him, except conditionally, and he admits that the plaintiff can recover in ejectment if he shows that he has failed to perform the conditions; nor does the plaintiff contend that he can recover unless it can be read as a part of the deed and contract.

I.   Hence the first contention is, whether the writing expressing the condition can be read as a part of the deed and contract. The three written instruments were made to effectuate one contract and should be read together, unless there is some well established legal principle which forbids it. Only by so reading them can the contract be ascertained. If the condition had been written into the deed, it was the deed of the intestate, or a deed poll. By accepting it, the implied and expressed agreements to be performed by the defendant would not be under seal. Covenant could not be maintained on them. *Johnson* v. *Muzzey*, 45 Vt. 419. In *Whitney* v. *French*, 25 Vt. 663, and *Graham* v. *Stevens*, 34 Vt. 166, it is held, where the condition to a deed poll is written on its back—in the one unsigned, and in the other signed by the person accepting the deed—that the title passed only conditionally. This was so, not because of any covenant to that effect by the grantee. It was so, because by accepting it he obtained no greater rights than was evidenced by the entire contract. The question is not whether, if, by the deed, the title passed unconditionally to the defendant; a conditional

reconveyance from him must be under seal. Without doubt if that were the question, the instrument required to effect a reconveyance, at law, from him, must be under seal, in compliance with the statute for the conveyance of real estate. Here the question is, what kind of a title did the defendant take? This must be determined from the written instruments evidencing the contract between the parties. To determine what the contract was, and what the parties intended to effectuate by the three written instruments, all may and must be read together. When read together, the defendant would take fee in the premises declared for only on performance of the condition. In legal principle there is no more objection to reading the condition as a part of the contract, and of the deed when written on a separate paper, than when written on the back of the deed. When written on the back of the deed, it need not be signed nor sealed by the party accepting the deed, and to be bound by it. It simply shows that he accepted the deed on the condition named in what is written on the back of the deed. When written on a separate paper, signed by the grantee in the deed, the instrument shows equally as well, and is as effective legally, and as much a part of the whole contract, as when written into or on the back of the deed. There was no error in the rulings of the court on this point. When the defendant, contemporaneously with receiving from the intestate the deed conveying the fee, executed and delivered the condition, he thereby said to, and agreed with, the intestate, that he accepted the deed upon the condition written, and that the title to the property, described in the deed and bill of sale, should not become vested in him until he had furnished the intestate the support specified in the condition. Such, we think, is the legal effect of the execution and delivery of the three writings of September 4, 1889. They were all properly received in evidence, and so was the value

of the property conveyed, as bearing upon the kind and quality of the support contemplated by the parties.

II.   Subsequently, on the trial, the plaintiff conceded that the parties understood that the defendant was to furnish the support upon the premises in contention.   The defendant immediately entered upon the execution of the contract. The intestate remained with him, and received the support given until April 12, 1892, with the exception of absences from sometime in June, 1890, to July 4, 1890; from sometime in February, 1891, to sometime in April, 1891; and from the last of August, 1891, to November 4, 1891.   The intestate spent these absences with his children and friends in the immediate neighborhood.   The plaintiff claimed, and gave some evidence which will be considered later, that the absences were occasioned by the failure of the defendant to perform the condition of the contract in regard to support.   The returns of the intestate were voluntary and uninfluenced, so far as is shown, by the defendant.   Immediately on each return the defendant entered upon furnishing the required support, and the intestate received it without protest or reservation.   Under these circumstances the defendant requested the court to charge:

"The jury are at liberty to infer from the circumstances developed in the evidence, that any breach of the condition, occurring before November 4, 1891, the last time he returned to the defendant's house, was waived by the intestate. If so waived, it could not be afterwards set up as a forfeiture."

The court did not comply with this request in terms, nor in substance.   In this we think there was error.   By the contract the intestate had no right to call upon the defendant for support, and at the same time claim that no contract requiring him to furnish such support existed between them. The two positions were inconsistent and could not be held by the intestate at the same time, certainly not without protest and notice.   He could not, under the contract, call

upon, and receive from, the defendant his support, and at the same time, by mental reservation or otherwise, claim that the contract for such support theretofore existing ·between them was at an end.   Whether the condition to the deed requires an act to be done in order to the vesting of the fee, or to prevent a defeasance of the fee already vested, the grantor, or party for whom the act is to be performed, may waive its performance.   This is especially true where the condition is for the support, as in this case, of the grantor, upon the premises.   What is proper support and care, and what such a lack of it as will put an end to the contract, and prevent the fee of the estate from vesting, often depends upon a great variety of circumstances and considerations.   The kind of support and of treatment which would be wholly inadequate and inappropriate for one person, might be fully adequate and appropriate for another.   It might depend upon the amount of property conveyed, upon the manner in which the person had been accustomed to live, the courtesy and forbearance with which he had been accustomed to be treated and to treat others. Vulgarity or profanity which would shock one and render his life miserable, might be inoffensive to another of a different character and habits of life.   In every walk of life, many things are to be forborne rather than insisted upon. The person to whom such support is due always has the right to elect whether he will waive, or insist upon, a partial or full failure for a brief time to perform such a condition as putting an end to the contract, and his right to support. The failure to perform, which will defeat the vesting of the title, should be a failure in substance rather than of the letter of the contract.   Otherwise, after years of faithful performance, one might lose, or be divested of his estate by a technical or partial failure.   Where both parties are living on the estate, and in some sense in possession, so that a re-entry is not required to terminate the conditional estate, it is

more imperative that the grantor should, by some unmistakable act, indicate his intention to put an end to the contract for the vesting of the estate upon a failure to perform the condition. Exacting or acquiescing thereafter in the performance of the condition is evidence for the jury, from which they would be warranted in inferring and finding that he did not insist upon ending of the contract for such non-performance, but that he still treated it as subsisting. Some of the cases seem to treat such exacting, or acquiescing in, the further performance of the contract, as a legal waiver of any acts then known to him, which otherwise might work a forfeiture of the contract. *Hubbard* v. *Hubbard*, 97 Mass. 188 (93 Am. D. 75 and note). In which case the court say in substance, not only that receiving subsequently performance of the condition is evidence of a waiver, but:

"If he treated the condition as still subsisting and obligatory upon the tenant, after the alleged breach of it, it would be a sufficient waiver."

See, also, *Crops* v. *Carson*, 8 Black. 138, (44 Am. D. 742, and an extended note collecting and reviewing the authorities). What is held and said in *Dunklee* v. *Adams, Admr.*, 20 Vt. 424, on the subject of waiver of a forfeiture is not inconsistent with the present holding. The question under consideration in that case was, whether equity would relieve against a forfeiture. There had been a judgment of forfeiture at law. The court, in reply to the contention that acceptance of certain things of minor importance under the contract was a waiver of the forfeiture, said:

"Waiver of the forfeiture would have been a good defence at law, and the judgment is to be taken as conclusive evidence that there had been none at the time it was rendered."

III. In the earlier part of the trial, against the defendant's exception, the plaintiff was allowed to put in evidence to show that the defendant did nothing towards the intestate's support when he was absent from the premises in contro-

versy.   If the defendant was under the duty of supporting
the intestate when he was absent, this testimony would have
been admissible as tending to show that he had failed to fur-
nish the support required by the contract.   Later in the trial,
on the plaintiff's showing, the defendant was  to  furnish the
support on the premises.   His failure to furnish it elsewhere
was not evidence tending to  show that  the  defendant had
failed to perform his contract.   It was of a character which
would be likely to prejudice the defendant in  the  minds  of
the  jury.   Under  our  practice a party cannot, against ex-
ception, introduce prejudicial testimony and cure  its  injuri-
ous effect by having the court charge the  jury to  disregard
it, nor by changing  the  ground  upon which  he  claims to
recover.   The admission of this testimony was error, not so
much of the court as of the plaintiff.   The case in regard to
the  admissibility and  materiality of  testimony  stood  as it
would if the intestate had been living.   If the intestate had
been living he could not have been allowed to show his acts
and declarations, done and made in the absence of  the  de-
fendant, to establish a failure  of  the  defendant to  perform
his part of the contract, unless the defendant had first intro-
duced such acts and declarations, on the  ground  they were
inconsistent with the intestate's claims on the trial, and then
the intestate could introduce them only in explanation of the
acts and  declarations  introduced  by the defendant.   One
cannot make evidence in his own favor.   This is so whether
he is the party to the action or his administrator.   *Godding,*
*Admr.,* v. *Orcutt,* 44 Vt. 54.   It was  error  to  receive  in
evidence, as tending to establish a failure by the  defendant
to perform the contract, against exception, the acts and dec-
larations of  the  intestate when  he was absent from the de-
fendant.   The  charge on  this subject, excepted  to,  is
objectionable.   It  allowed  the  jury to consider as  evidence
tending to show a breach of the contract on the part  of  the
defendant, "the  circumstances  under which  he  remained

away, and the circumstances under which he returned." The most such circumstances could legitimately be used for would be to show that the intestate by his acts and declarations when absent from the defendant was claiming there had been a breach of the contract for his support by the defendant. Such claims could be only used for the purpose already indicated. They could not be used to establish there had been such a breach. So far as the charge allowed the jury to use them to establish a breach of the contract by the defendant, it was erroneous. We also think the court erroneously allowed the plaintiff to give his reasons for not visiting his father at the defendant's, and to state that he acted in good faith, and on what he considered sufficient grounds, in bringing the petition to have the intestate adjudged an insolvent. These matters did not tend to show that the defendant had failed to perform his contract to support the intestate, and would naturally prejudice the jury against the defendant. Doubtless, as now claimed, the defendant did not except to the admission of some testimony, which he would have excepted to, if he had known that the plaintiff would claim that the defendant was bound to support the intestate only upon the premises conditionally conveyed. But this court cannot aid him in this respect. Neither was the county court in error in its action because he was misled on this point.

IV. The defendant also excepted to the refusal of the court to receive in evidence the certified copy of record made by two justices of the peace for the purpose of impeaching Hiram Winch, a witness produced by the plaintiff. Whether two justices of the peace who, on proper complaint, charging the person in whose possession the property was claimed to be with having stolen it, had issued a warrant to search for the property in the night time, and if the property was found to arrest and bring before them the person charged, have authority under the law, upon trial, to

render a valid judgment against such person for petit larceny, we have not considered nor determined. The alleged record does not raise that question. It does not show that Hiram Winch, in and by the complaint, was charged with any offence known to the law. The complaint, under oath, avers that he has had stolen from him six turkeys of the value of six dollars, which had been found by Hiram Winch, and which he suspected and believed were then concealed in the hog pen or barn of Hiram Winch. He prays for a warrant to search the premises, and if the property is found to bring the property and Hiram Winch before the justices, to be dealt with as the law directs. The record does not disclose whether the warrant prayed for was issued, but proceeds to aver that Hiram Winch was put to answer the complaint, pleaded not guilty, and put himself on the court for trial; and on hearing the evidence, the justices adjudged him guilty of the crime charged in the complaint. This is the substance of what the record discloses. The only thing therein charged against Hiram Winch is that he found some stolen property, and of this he is found and adjudged guilty and fined. But finding stolen property is no crime known to the law. If the complaint had charged Hiram Winch with having stolen the property, or with having concealed it, knowing it to have been stolen, the question argued whether two justices of the peace could therein convict the person charged of petit larceny would have been raised. As it is, the record does not show that Hiram Winch was charged with, nor convicted of, any crime. It was properly rejected.

V.   By his sixth request the defendant asked the court to charge that if the intestate conveyed to the defendant the property in contention, with the fraudulent and deceitful purpose of avoiding his debts, enumerated, the plaintiff could not recover. By the seventh request he asked the court to charge that if the intestate fraudulently concealed

that he owed these debts, at the time of the contract, from the knowledge of the defendant, the plaintiff cannot recover. A fraud committed by the intestate upon his creditors, or by concealment of his debts upon the defendant, might furnish the defendant a cause of action, so far as he was injured thereby. It might give the defendant the right to rescind his contract with the intestate if seasonably acted upon. In defending this action the defendant is insisting upon the contract, and claiming that the property has become vested in him. As it vested only upon performance of the condition, he must show performance. That he was defrauded into making the contract may entitle him to recover damages, but when he is insisting that the title to the property has vested in him, it does not excuse him from performing the condition on which alone the title could vest in him. These requests were properly refused.

*Judgment reversed and cause remanded.*

Taft, J., being sick, did not sit.