HOLBROOK, CARTER & CO. *v.* ROBERT MURRAY AND ORRIN MURRAY.

A party is not entitled to prove his own declarations relative to a material point in the case, unless they constituted a part of the *res gestæ*, and were introduced to qualify, or explain, some leading fact in the case, with which the party was connected, and were contemporaneous with such fact, and were made previous to the commencement of the controversy.

Where the defendant in an action of ejectment justified his possession, as agent of a mortgagee, and the validity of the mortgage came in question, and it became material to prove, that the mortgage notes were in existence previous to the date of the mortgage, it was held, that the defendant was not entitled to prove, that he said to a third person, the day previous to the date of the mortgage, that he held the notes as the agent of the payee and must secure them, and that he was then advised by such third person to secure them upon the property in controversy in this suit.

EJECTMENT for land in Brookfield. Plea, the general issue, and trial by jury, June Term, 1847,—HALL, J., presiding.

On trial the plaintiffs claimed title to the premises in question by virtue of the levy of two executions in their favor against Robert Murray, and gave evidence tending to prove, that the defendants were in possession of the premises at the commencement of this suit.

The defendants gave evidence tending to prove, that Robert Murray was not in possession of the premises, and that Orrin Murray was in the possession as the hired man of Ephraim Riford, and they gave in evidence a mortgage deed from Robert Murray to

Riford, dated April 16, 1842, and three notes described in the condition of said deed;— and they also gave evidence tending to prove, that these notes were in existence previous to the date of said mortgage,—that they were given for money loaned by Riford to Robert Murray,—that in March, or April, 1842, Riford, who was about leaving the state, delivered these notes to Orrin Murray, with directions to have them secured, in case there should be danger of Robert Murray's failure,—that during the absence of Riford, Orrin Murray procured Robert Murray to execute and deliver to him, as Riford's agent, the mortgage in question,—that on Riford's return, about the first of May, 1842, he was informed by Orrin Murray of what he had done, and approved it,—that on the second day of May, 1842, Robert Murray surrendered to Riford the possession of the premises,—that Riford employed one Ryder to manage the premises during that season, and in the spring of 1843 employed Orrin Murray to carry them on for him,—and that Orrin Murray was so in possession thereof at the commencement of this suit.

The plaintiffs then gave evidence tending to prove, that the said notes and mortgage were executed without consideration, and for the purpose of defrauding the creditors of Robert Murray, and that the surrender of the possession of the premises to Riford was also fraudulent, as against the creditors of Robert Murray, and made to enable him to enjoy the rents and profits thereof, and that Orrin Murray and Riford were aiding Robert Murray in this object.

In the course of the trial the defendants offered to prove, that Orrin Murray, in the summer of 1843, and while he was in possession of the premises, stated to sundry persons, of whom he was receiving labor and other things for the farm, and to others, that he was in possession under Riford, and as his servant;—to the admission of which testimony the plaintiffs objected; but the objection was overruled by the court. The defendants also offered to prove, that on the 15th day of April, 1842, Orrin Murray informed one Holman, who was then taking measures to secure demands against Murray & Scott,—of which firm Robert Murray was a member,— that Riford's notes were in his, Orrin Murray's, hands, and must be secured, and that Holman then urged said Orrin to secure Riford's notes upon Robert Murray's property in Brookfield, and not upon Murray & Scott's property in Northfield;—to the admission of

Holbrook et al. *v.* Murray et al.

which testimony the plaintiffs also objected; but the objection was overruled by the court. It was proved, that the debts, upon which the plaintiffs' executions were founded, were contracted previous to April 16, 1842.

The court instructed the jury, among other things, that if the notes described in the mortgage to Riford were founded upon good consideration, and were *bona fide* debts due to Riford from Robert Murray, and Robert Murray had surrrendered the possession of the premises to Riford,—although for the purpose of enabling Murray to receive the rents and profits of the same, without accounting therefor to Riford, and for the collusive purpose of preventing the creditors of Murray from attaching the produce of the premises,— still the plaintiffs would not be entitled to recover in this action.

Verdict for defendants. Exceptions by plaintiffs.

*J. L. Buck* and *E. Weston* for plaintiffs.

*O. H. Smith* and *W. Nutting*, for defendants, to the point, that the testimony as to the conversation between Orrin Murray and Holman was admissible, cited 1 Greenl. Ev. 110; *Milford* v. *Bellingham*, 16 Mass. 108; *Boyden* v. *Moore*, 11 Pick. 362; *Walton* v. *Green*, 1 C. & P. 621; 8 Watts 479; *Ross* v. *Bank of Burlington*, 1 Aik. 43; 3 Dall. 19; 2 Poth. on Obl. 247; Cow. & H. Notes to Phil. Ev., Part 2, 592.

The opinion of the court was delivered by

DAVIS, J. It is not important to inquire, whether the declarations made by Orrin Murray to persons in his employment upon the farm, and others, while he was in the occupation thereof, to the effect, that he was merely acting as the servant of Riford, without any title or interest in himself, were properly admitted; since the main controversy, involving the validity of the notes and mortgage from Robert Murray to Riford, has been determined, so far as the trial below is concerned, in favor of the defendants. The declarations in question contributed nothing to that result, which, if not attained by means otherwise objectionable, will serve as an ample protection to Orrin, as well as the other defendant, whatever may have been the character of his possession.

The admission of the sayings of Orrin Murray to Holman, the day previous to the date of the mortgage, that he then had the Riford notes in his possession and must secure them, and that Holman advised, that he should seek security on the Brookfield property, the property in question, and not upon the property at Northfield, owned by Murray & Scott, upon which latter property, it seems, Holman was desirous to secure some debts he had against the firm, raises a different question; inasmuch as the actual existence of the notes, anterior to the date of the mortgage, became material and pertinent in determining the issue between the parties.   As these sayings come from one of the defendants, and relate to a point admitted to be material, it is obvious, that they were not admissible, unless they constituted a part of the *res gestæ*, and were introduced to qualify and explain some leading fact in the case, with which that defendant was connected, and were contemporaneous with such fact, and were made *ante litem motam.*

Tried by these tests, we think they were inadmissible.   Orrin Murray, at the time of this conversation, was not engaged in any act, or transaction, respecting the notes,—not so much, even, as exhibiting them to view.   It is true, that on the next day the mortgage on the Brookfield property was obtained, through his agency, in accordance with the advice of Holman.   Declarations, made while in the execution of that business, in explanation of the purpose, and illustrative of attending circumstances, and before the attachment upon the same property was made by the plaintiffs, which gives rise to this controversy, would have presented a different question, and would doubtless have been admissible.

The notes bear date some time previous to the date of the mortgage, and there was other evidence, tending to show that they were not only executed at the time they bear date, but that they were given for money actually loaned by Riford to Robert Murray, and that, on the former being about to go on a journey to the west, he placed them in the hands of Orrin Murray, with directions to get security on them, in case of any trouble.   This evidence, without the aid of the hearsay testimony in question, may, or may not, have been sufficient to have induced the result which followed.   We cannot assume, that it would, for the purpose of showing that the objectionable testimony was of no prejudice to the plaintiffs.   *Enos v.*

*Tuttle,* 3 Conn. 250. *Milford* v. *Bellingham,* 16 Mass. 108. *Boyden* v. *Moore,* 11 Pick. 362. *Ross* v. *Bank of Burlington,* 1 Aik. 43. 2 Cow. & H. Notes to Phil. Ev. 589. *Sessions* v. *Little,* 9 N. H. 271. *Doorman* v. *Jenkins,* 2 Ad. & E. 256. 1 Greenl. Ev., § 108. *Thorndike* v. *Boston,* 1 Met. 242. 2 Shep. 141.

We have not found it necessary to consider the questions in relation to the refusal of the court to give the instructions required by the plaintiffs' counsel.

The judgment of the county court is reversed, and a new trial granted.