MARTIN E. TURNER *v.* D. J. HOWARD.

October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed November 16, 1916.

*Deceit in Sale or Exchange of Property—Measure of Damages— Evidence—Value of Property Exchanged—Recoupment— Mutual Misrepresentations—Proof of Part of Conversation —How Far Remainder May be Shown.*

The measure of damages in actions for deceit in the sale or exchange of property is the difference between the value of the property as it really was at the time of the sale or exchange and what its value would have been if as represented.

In an action for deceit in the exchange of horses, evidence offered by defendant as to the value of the horse given by plaintiff in exchange, is admissible in mitigation of damages, and, probably, as bearing upon the probability of defendant's claim that the transaction was a fair exchange, the defects of one horse being offset against those of the other; but not upon the question of defendant's liability.

In actions for deceit in the exchange of property recoupment of damages is sometimes permitted where there have been mutual misrepresentations.

In an action for deceit in the exchange of horses, it is error to allow the defendant to testify that, upon being informed that the horse given by him was unsound, he offered to rescind the sale, the conversation not being made admissible by another part thereof previously introduced by plaintiff.

Where a party introduces in evidence part of a conversation, his opponent is entitled to introduce only so much of the remainder as concerns the same subject and is explanatory of the part first in-

troduced; and this rule admits an otherwise inadmissible declaration as part of the same conversation only to give a complete understanding of the tenor and effect of the admissible part.

ACTION of tort for deceit in the sale of a horse. Plea, the general issue. Trial by jury at the December Term, 1915. Caledonia County, *Stanton,* J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. The opinion states the case.

*Simonds, Searles & Graves* for the plaintiff.

*Porter, Witters & Harvey* for the defendant.

TAYLOR, J. This is an action of tort for fraud in the sale of a horse with verdict and judgment for defendant. Plaintiff alleges in substance a sale to him by defendant of a certain horse; that defendant falsely and fraudulently warranted the horse to be sound, whereby plaintiff was induced to make the purchase; that in fact the horse was at the time unsound, subject to severe hemorrhages and unable to work, which was well known to defendant; that the horse became sick and afterwards died as a result of the unsoundness, whereby plaintiff lost its value. Defendant filed no plea or answer. During the trial plaintiff was allowed various exceptions to statements by defendant's counsel to the jury, to the admission and exclusion of evidence, to the charge of the court, to the refusal of the court to charge as requested and to the judgment on the verdict which was for defendant,—all as shown by the transcript referred to and made controlling.

Plaintiff's evidence tended to establish the fraud charged in the declaration and to show that he sold defendant a certain horse, known as the Ramsey horse, for $250; that in part payment defendant let him have the horse in question, known as the Grapes horse, at an agreed price of $150; that defendant paid the balance of the price of the Ramsey horse, by a cow and calf valued at $50 and $50 in cash. Under exception defendant was permitted to introduce evidence tending to show that there was no sale, but merely an exchange of horses; that the Ramsey horse was unsound; that the defects in the Grapes horse were

"offset" by the defects in the Ramsey horse; and that plaintiff received in value as much as he gave. Early in the trial defendant's counsel advanced the theory that in case of an exchange as distinguished from a sale of property one could not recover in this form of action if he received in value as much as he parted with. The claim was based upon the ground of mitigation of damages; it being admitted that, if there were mutual misrepresentations amounting to actionable fraud, there could not be recoupment or set-off of damages. The rulings of the court were favorable to defendant and in its charge the court adopted the defendant's theory of the law. Under the charge the jury were at liberty to return a defendant's verdict, if they found that the transaction was an exchange and not a sale and that it was a fair exchange, regardless of false representations. In effect the jury were told that plaintiff could not recover, if what he received was worth as much as the horse he let the defendant have—that that would be a fair exchange and that "a fair exchange is no robbery." Most of plaintiff's exceptions grow out of this phase of the case and are disposed of as this question turns.

There is a more or less prevalent notion, outside the profession at least, that an exchange of personal property, particularly a "swapping" of horses, is governed by different legal principles than a sale of the same property. But the law recognizes no such distinction. A contract of exchange is governed by the same rules of law as a contract of sale. *Russell* v. *Phelps,* 73 Vt. 390, 50 Atl. 1101. Thus it was held in *Patee* v. *Pelton,* 48 Vt. 182, that a warranty of title is implied in a contract of exchange the same as in a contract of sale. The rule as to liability for fraud in the sale of property was applied to the exchange of real estate in *Shanks* v. *Whitney,* 66 Vt. 405, 29 Atl. 367, and to an exchange of horses in *Rand* v. *Bordo,* 85 Vt. 97, 81 Atl. 251. It may be conceded that both fraud and damage must concur to establish liability in such an action; but the defendant misconceives the correct rule of damages, claiming one rule for a sale and another for an exchange.

It is held in some jurisdictions that the measure of damage for misrepresentations which induce an exchange of property is the difference between the actual market value of the property which is parted with and the actual market value of that which is received under the contract. 12 R. C. L. 455. But the pre-

vailing rule elsewhere is in accord with our own well established general rule that the measure of damages in such actions is the difference between the value of the property as it really was at the time of the sale or exchange and what its value would have been if as represented. See monographic note 123 Am. St. Rep. 783, where the cases are reviewed; *Horne* v. *Walton,* 117 Ill. 130, 141, 7 N. E. 100, 103; *Ettlinger* v. *Weil,* 184 N. Y. 179, 77 N. E. 31; *Gustafson* v. *Rustemeyer,* 70 Conn. 125, 39 Atl. 104, 39 L. R. A. 644, 66 Am. St. Rep. 92; *Murray* v. *Jennings,* 42 Conn. 9, 19 Am. St. Rep. 527. The last case cited is much in point. Plaintiff exchanged oxen worth $100 for a horse actually worth $125, but if as represented worth $225. She was permitted to recover on the basis of the horse's being as valuable as she had a right to believe it was from defendant's representations.

No satisfactory reason is advanced why a different rule should prevail in case of an exchange of property than that applied in case of a sale. In both the defrauded party is entitled to the benefit of the contract, which he would be denied unless the recovery placed him in the same position as if no fraud had been practiced upon him.

It is quite probable, in view of plaintiff's claim as to the price placed upon the Ramsey horse, that the evidence of its value was admissible as bearing upon the probability that the trade was as plaintiff claimed. See *Rand* v. *Bordo, supra.* But the use of such evidence was not thus restricted, as appears from what we have already said about the way the case was submitted. The use made of it went beyond mitigation of damages, the pretext under which it was received. It was employed to negative liability, while the only use, if any, that could properly be made of it, aside from that already indicated, was by way of recoupment. Counsel discuss the propriety of off-setting damages in actions for torts; but that is not the real question here. It is properly a question whether in such an action the defendant can recoup damages for the plaintiff's false representations in the same transaction. While the question of recoupment is not presented by the record, and so is not decided, as the case must be sent back for retrial we deem it advisable to call attention to the fact that it is sometimes permitted in case of mutual misrepresentations in exchange of property. See *Carey* v. *Guillow,* 105 Mass. 18, 7 Am. Rep.

494; *Chandler* v. *Childs,* 42 Mich. 128, 3 N. W. 297; *Cole* v. *Colburn,* 61 N. H. 499.

The views herein expressed dispose of most of plaintiff's exceptions. Aside from one to be considered presently, the questions not covered are not likely to arise on a retrial and for that reason are not noticed.

Defendant was permitted to testify under exception, against the objection that it was a collateral matter, that in a conversation about which plaintiff had already testified he told plaintiff that if plaintiff would let him have his horse and cow and calf and forty-five or fifty dollars that plaintiff might have his horse; and that to this plaintiff replied that defendant had got to pay him damages. It is urged that the admission of this evidence violated the rules excluding offers of compromise and self serving declarations. In justification of the ruling defendant relies upon the claim that as plaintiff had testified to a conversation claimed to have been had between him and defendant, he was entitled to put in evidence his version of the conversation. The substance of plaintiff's testimony as to the conversation was that directly after the Grapes horse had the first bleeding spell he called defendant by telephone and told him what he had discovered; that the horse wasn't anything as defendant represented him to be,—was worthless,—and he should expect defendant to help him out; that defendant expressed surprise that the horse was in that condition,—said he had never known of any such thing.

Defendant's offer to rescind was inadmissible and calculated to prejudice the plaintiff. It was not made admissible by the part of the conversation that plaintiff had introduced. All that he had sought to show was defendant's denial that he knew that the horse had bleeding spells. It is too broad a statement of the rule to say that when a party shows part of a conversation his opponent is entitled to show the whole. An important qualification is the relation of the part offered to the part first introduced. It is only so much of the remainder as concerns the same subject and is explanatory of the part first introduced that is receivable. 3 Wig. on Ev. §2113. This fully accomplishes the purpose of the rule, which admits an otherwise inadmissible declaration as part of the same conversation only to give a complete understanding of the tenor and effect of the admissible part. This limitation is implied in the state-

ment of the rule to be found in our cases. When one gives in evidence a material declaration of another, the latter is entitled to show enough of the circumstances in which it was made and the conversation of which it was a part to give force and certainty to it. *Griffin* v. *B. & M. R. Co.*, 87 Vt. 278, 290, 80 Atl. 220. See, also, *Dean* v. *Dean's Estate*, 43 Vt. 337; *Blaisdell* v. *Davis*, 72 Vt. 295, 48 Atl. 14; *Blunt* v. *M. & W. R. R.*, 89 Vt. 152, 94 Atl. 106.

For cases in other jurisdictions to the same effect see *Cusick* v. *Whitcomb*, 173 Mass. 330, 53 N. E. 815; *Hathaway* v. *Tinkham*, 148 Mass. 85, 19 N. E. 18; *Jamison* v. *People*, 145 Ill. 357, 34 N. E. 486; *Fleischman* v. *Toplitz*, 134 N. Y. 349, 31 N. E. 1089; *Sherman* v. *Stafford Mfg. Co.*, 23 R. I. 529, 51 Atl. 48.

*Reversed and remanded.*