IN RE MARY W. CAMPBELL'S WILL.

May Term, 1929.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and WILLCOX, JJ.

Opinion filed November 6, 1929.

*Jones & Jones* and *Lawrence & Stafford* for the contestants.

*Marvelle C. Webber* for the proponents.

WILLCOX, J. This case has been in this Court once before upon appeal by proponents from a verdict and judgment for contestants. *In re Campbell's Will*, 100 Vt. 395, 138 Atl. 725, 54 A. L. R. 1369. It is now here upon an appeal by contestants from a verdict and judgment for proponents.

The instrument in question purports to be a will and is in the usual form of such documents, but that part thereof where the signatures of a maker and of witnesses and the attestation clause would naturally come, is mutilated and torn out, so that the document is wholly wanting in the formalities of due execution.

The record shows that the case by the proponents was presented upon the theory that said document was in form and content a will, and came to light under such circumstances as to lead to the inference that it had been made for Mrs. Campbell in her lifetime, and, although the proponents were unable by any direct evidence to show that the same had been duly executed with the formalities required by law, that such due execution was a fact which arose as an inference from all the circumstances shown from the finding, time, and manner of spoliation. The case by the contestants was presented upon the theory that said document was merely a copy of a will which Mrs. Campbell had legally revoked about four years before her death, and that no such inference of fact could arise from the mutilation of such a copy from which due execution, and that the document itself was the last will and testament of Mrs. Campbell, could be found.

Contestants rely upon six points of claimed error. Mrs. Campbell deceased January 24, 1926, leaving a surviving husband, William E. Campbell, and certain heirs at law, the proponents in this case. William E. Campbell deceased April 5, 1926, leaving surviving certain heirs at law, the contestants

in this case. And while the contestants here are not shown, themselves, to have been guilty of the mutilation of the document in question, they are in no better position than Mr. Campbell would have been, for they stand in his stead, and are affected by his acts and declarations in the same manner and to the same extent as he would have been had he been the contestant himself. *Hudson* v. *Hudson*, 287 Ill. 286, 122 N. E. 497, 502; *In re Lambie's Estate*, 97 Mich. 49, 56 N. W. 223.

By the terms of the propounded document Mr. Campbell was given a life use only of the major part of the property of his deceased wife, which was shown to be approximately $30,000. Although the record shows that the document was in the possession of Mr. Campbell after the decease of his wife, it does not show that he made any move to deliver it to the probate court or to the executor named therein, as required by G. L. 3215.

After Mrs. Campbell's decease Mr. Campbell was ill and confined to his bed, and while so confined and within a week or ten days after her death, he sent for Ernest H. O'Brien, formerly an attorney at law of this Court, and in whose office, when he was in lawful practice, Mrs. Campbell had a will drawn sometime between 1910 and 1916. While O'Brien was in Mr. Campbell's bedroom, the document in question was taken by Mr. Campbell from a little tin box or trunk and, with instructions to destroy it, was handed by him to O'Brien. After O'Brien had torn out the missing leaves, at Campbell's request the document was handed back to him and by him returned to the tin trunk. Campbell tore up the part of the document removed by O'Brien, handed the bits to a Mrs. Stevens, the housekeeper, who burned them.

Thereafter, on March 10, 1926, F. C. Wheeler, one of the proponents, visited Mr. Campbell in his bedroom and had conversation with him. Against the objection of the contestants Mr. Wheeler was permitted to testify that Mr. Campbell told him "there was a will." No ground of objection was stated. There is no question for review. *Comstock's Admr.* v. *Jacobs*, 89 Vt. 133, 94 Atl. 497, 501, Ann. Cas. 1918A, 467; *Morgan* v. *Gould*, 96 Vt. 275, 119 Atl. 517; *Robinson* v. *Leonard*, 100 Vt. 1, 134 Atl. 706; *Saliba* v. *N. Y. C. R. R.*, 101 Vt. 56, 140 Atl. 194.

██ Mrs. Stevens was improved by the proponents and in direct examination testified to what was done by Mr. Campbell and Mr. O'Brien on the occasion of the mutilation of the document. The only facts shown by this examination were that the document was mutilated after the death of Mrs. Campbell, and how and by whom it was done. The contestants in cross-examination sought to show by her what was said by Mr. Campbell to O'Brien while the mutilation was going on. Against the objection and exception of the proponents the court permitted her to state that Mr. Campbell told O'Brien to destroy the document. In no sense did this answer tend to qualify, explain, or contradict anything she had said about the time or method of mutilation. It showed merely that O'Brien did what Campbell directed him to do, namely, mutilate the document—a fact that already had appeared.

But because the court, in its discretion, allowed this testimony to come in under such circumstances did not in itself, as the contestants argue, open the door to permit the witness to testify to all the statements made by Mr. Campbell to O'Brien. The record discloses that had the further question been answered the contestants would have shown by her that Mr. Campbell, in stopping the total destruction by O'Brien, expressed a wish to save the body of the document so that he could carry out some of the specific bequests Mrs. Campbell had made of numerous of her personal belongings. Had the answer been received it would not have qualified, explained, or contradicted her direct examination. So in no sense was it cross-examination.

The contestants invoke the general rule that, where a part of a conversation is shown by a party, his opponent is entitled to show the whole and cite numerous cases to this point. An important qualification of this rule is the relation of the part offered to the part first introduced. It was said, Taylor, J., in *Turner* v. *Howard,* 91 Vt. 49, 53, 99 Atl. 236, 237: "It is only so much of the remainder as concerns the same subject, and is explanatory of the part first introduced that is receivable. 3 Wig. on Ev. § 2113. This fully accomplishes the purpose of the rule, which admits an otherwise inadmissible declaration as part of the same conversation only to give a complete understanding of the tenor and effect of the admissible part." The effect of the offered testimony was not to put a correct con-

struction upon any conversation the proponents had introduced, but merely had the effect to supplement that which the contestants had themselves brought out. In no sense was it explanatory of the part first introduced so the argument and the cases relied upon have no application here and are not to the point. *Adams* v. *Cook,* 91 Vt. 281, 286, 100 Atl. 42; *Hendrickson* v. *International Harvester Co.,* 100 Vt. 161, 168, 135 Atl. 702.

■ ■ The proponents offered an eleven-page deposition of Sarah E. Phelps. The court struck out one short paragraph thereof, and upon admitting the balance counsel for contestants took this exception: "I object to that portion that is admitted, on the ground that it is incompetent and hearsay, and made by Mrs. Campbell at least approximately four years prior to her death."

Contestants, in their brief, call our attention to only one sentence of the admitted part as objectionable. Neither to this nor to any other part was specific objection made below. The objection relied upon was too general. In order for a party to save a question as to the admissibility of any part of a deposition, it is necessary that the part objected to be pointed out, and the ground of objection stated, that the court may know precisely what it is asked to rule upon. *Hurlburt* v. *Hurlburt's Estate,* 63 Vt. 667, 22 Atl. 850; *Webb* v. *Richardson,* 42 Vt. 465.

■ ■ O'Brien was improved as a witness for the contestants and, without objection, testified that he tore the document in question at Mr. Campbell's request. Shortly thereafter counsel put this question: "Q. You say you tore that up because Mr. Campbell told you to, asked you to?" Objection was interposed that the witness had already answered that question and the court called counsel's attention to the same fact. Whereupon counsel for contestants stated that he wanted to show why Mr. Campbell wanted the document back. Objection again being interposed, the question was excluded. No exception was asked for or noted. It was within the discretion of the trial court to decline to allow counsel to again ask the question that had just been answered. *Mullin* v. *Flanders,* 73 Vt. 95, 50 Atl. 813; *State* v. *Meehan,* 86 Vt. 246, 84 Atl. 862; *Miller* v. *Pearce,* 86 Vt. 322, 85 Atl. 620, 43 L. R. A. (N. S.) 332; *Shores* v. *Simanton,* 99 Vt. 191, 130 Atl. 697. And this is especially so

when the excluded question is more a statement by counsel of what the witness has just said than it is a question, and is so framed as to call for a "yes" or "no" answer. Whereupon, without any question being put or pending, this took place at the bench: "*By counsel for contestants:* We offer to show that Mr. Campbell, in addition to asking Mr. O'Brien to destroy the copy, told him to hand it back to him; and further stated that he wanted to retain those portions and pages of the will giving certain pieces of jewelry and bric-a-brac to certain individuals, so that he might himself carry out some of her pet wishes in reference to the legacies." The offer was excluded. In support of this ruling the proponents argue that, there being no question pending, no point was saved for review by the exclusion of the offer. By some courts it is held that an offer of oral evidence may be refused if the witness is not present in court and circumstances indicate that the offer is not made in good faith; and that the court may not be required to act upon mere offers when the witnesses are not questioned. Abbott's Civil Jury Trials, p. 304, and cases cited.

Nothing in the record shows that the offer was not made in good faith. The witness was present, and we assume that the method used, not an uncommon one, was for the purpose of furthering the business of the court, with its sanction and without objection by opposing counsel, the contrary not appearing.

The record shows that the offered declaration was made by Mr. Campbell after he had handed the document in question to O'Brien for destruction, while he was so acting and after he had torn out the last two sheets of the same. It also shows that acting on the offered declaration, O'Brien handed the thus mutilated document back to Mr. Campbell for preservation. Was this declaration mere hearsay or a part of the *res gestae?*

It was said in *Comstock's Admr.* v. *Jacobs, supra:*

"The general tests of admissibility of declaration accompanying acts, to be found in our decisions, are as follows: There must be a principal fact or transaction in issue or relevant to the issue. Then, only such declarations are admissible as grow out of the transaction, serve to illustrate its character, are contemporaneous with it and derive some credit from it. The act itself must be equivocal,

that is, require elucidation or explanation, and the declaration must be of the character to give definite significance to the equivocal conduct by supplying the missing part. To be admissible under this rule the declaration must not only be a part of the transaction but must also be offered to qualify and explain the transaction, the use of the words being wholly subsidiary and appurtenant to the act.''

And in support of this statement these cases are cited. *State* v. *Ryder,* 80 Vt. 422, 68 Atl. 652; *Fife & Child* v. *Cate,* 85 Vt. 418, 82 Atl. 741; *Hopkins* v. *Heywood,* 86 Vt. 488, 86 Atl. 305, 49 L. R. A. (N. S.) 710; *State* v. *Howard,* 32 Vt. 380, 404, 78 A. D. 609; *Holbrook* v. *Murray,* 20 Vt. 528.

Applying this statement as the test we find that one of the principal facts in issue related to whether the mutilation was of an original or a mere copy. The offered declaration was contemporaneous with the act of destruction. But here the requirements of the rule end. The destruction of the instrument was deliberate and intended. In no sense was it, as far as accomplished, an equivocal act. The declaration did not serve to illustrate its character, did not elucidate or explain why the instrument was mutilated. It gave no definite signification to the destruction already accomplished at the time the declaration was made. It had no tendency to show whether the destruction, so far as accomplished, was an act in mutilation of a copy or an act in mutilation of an original. Failing thus to fulfill the requirements of the rule, the exclusion of the offered testimony was not error.

■ While Mrs. Stevens was on the stand as the contestants' witness, they offered to show by her that Mrs. Campbell, some years before her death and while making a call in the home of Mrs. Stevens, stated that she (Mrs. Campbell) had just been to O'Brien's office and destroyed her will. The offer was ''for the purpose of· showing her state of mind in connection with the *animus revocandi.*'' At the former trial Mrs. Stevens was permitted to testify to this under exception by proponents. This Court held on review that· its admission was fatal error.

It is true that at the former trial it was not received to prove the intent, the *animus revocandi,* but was received in

corroboration of the testimony of O'Brien of the fact sought to be proved, namely, that there was a revocation by the lawful destruction of the will by the testator herself. But as pointed out in *In re Campbell's Will, supra,* at pages 401, 402 of 100 Vt., 138 Atl. 725, 54 A. L. R. 1369, the only grounds on which declarations of a testator in respect to a claimed revocation can be received, is the *res gestae* doctrine. In order to bring it within that rule the declaration must be more than a mere narrative of a past transaction, which we hold this was. *Comstock's Admr.* v. *Jacobs, supra.*

The contestants excepted to that part of the charge wherein the court said: "Mr. Campbell was interested in any will his wife made or might make and in what he and Mr. O'Brien at his direction, did to Proponent's Ex. 1, there is no dispute in the evidence but what was done was an unlawful destruction of the same," on the ground that this charge presumes that the instrument which was destroyed was the last will and testament of Mrs. Campbell, and excluded the possibility or claim of the contestants that it was only a copy and not the original instrument, and if a copy no presumption would arise, as suggested by the court.

Again the contestants except to that part of the charge wherein the court said: "From the fact that Mr. Campbell destroyed the instrument—Proponents' Ex. 1—by destroying the last two sheets of the same, the presumption arises that this instrument was legally drawn and executed by Mrs. Campbell as her last will and testament; and this presumption is sufficient for you to find that Proponents' Ex. 1 was Mrs. Campbell's and is Mrs. Campbell's duly executed will in existence at the time of her death," on the ground that this assumes that this instrument was the last will and testament of Mrs. Campbell and not a copy.

Again the contestants except to that part of the charge, near the end of the charge, wherein the court said: "Even if you find that Mrs. Campbell destroyed a will duly executed by her, as claimed by contestants, the presumption still remains that Proponents' Ex. 1 is her last will and testament. For aught that appears in the evidence the same might have been executed by her at a time later than the destruction of the instrument testified to by Mr. O'Brien, or at a later time than the execution of the will that O'Brien destroyed, if the same

had been executed by her. Proponents' Ex. 1 was never destroyed prior to Mrs. Campbell's death. It was kept in a tin box in the home of Mr. and Mrs. Campbell; the two sheets of this instrument which would have shown whether or not it had been duly signed and witnessed, were intentionally destroyed by Mr. Campbell. The best evidence as to whether or not that was a duly executed will was destroyed by Mr. Campbell, and, as I said, under such circumstances, the presumption still remains that Proponents' Ex. 1 was duly executed by Mrs. Campbell, and it is her last will and testament,'' on the ground that there is no evidence in the case of any other will having been made by Mrs. Campbell, and on the ground that there is no evidence tending to show that she ever executed any other instrument after 1922.

We consider the first two of these exceptions together, for they amount to the same thing, namely, that the language used presumed that the destroyed document was the last will and testament of Mrs. Campbell and excluded from the consideration of the jury the claim of the contestants that the document was merely a copy. The exceptions taken are not that the charge given, applicable to the proponents' theory of the case, is not correct, but merely that the charge assumes that the document was an original and not a copy. These exceptions make it necessary to examine the charge as a whole. Such examination shows that, the court, after explaining fully and explicitly, the presumptions of fact arising from the spoliation of the document, then explained to the jury that such presumption of fact was sufficient for them to find that the document was Mrs. Campbell's duly executed will in existence at the time of her death and added ''unless the presumption is overcome by other evidence in the case.'' The court then rehearsed to the jury the evidence adduced tending to rebut such presumptions; and in that connection told them that, if they should find that the document in question ''was simply a copy and nothing more, why then, of course, there was no will in existence at the time of Mrs. Campbell's death.'' The court then rehearsed the evidence adduced in support of the proponents' case and therein discussed the presumptions of fact arising from the spoliation shown and their bearing upon the proponents' theory of the case.

■ Having thus once clearly and explicitly explained the presumption of fact arising from the spoliation shown and its relation to the claim of the contestants, they cannot complain if the court, in explaining to the jury the effect of such presumptions as applicable to the proponents' theory of the case, did not qualify the charge by telling them that what it was then saying to them applied only in the event they found the document to be an original and not a copy.

The court later in its charge explained the requirements of law as to due execution of a will and the fact that the document in question lacked the formalities of such execution. By reason of the very nature of the case it then became the duty of the court to explain the requirement of law as a basis upon which the jury could find due execution, and that the document was the last will and testament of Mrs. Campbell. The fact that the court in doing this did it on the assumption that the document was an original and not a copy, viewed in the light of the charge as a whole, did not exclude the jury from finding that it was a copy. *Patch Mfg. Co.* v. *Protection Lodge,* 77 Vt. 294, 325, 326, 60 Atl. 74, 107 A. S. R. 765, and cases cited; *Landry* v. *Hubert,* 100 Vt. 268, 279, 137 Atl. 97; *Commonwealth* v. *Jones,* 297 Pa. 326, 146 Atl. 905, 908; *Commonwealth* v. *Scott,* 284 Pa. 159, 130 Atl. 317, 319.

■ The last exception and the third one to the charge presents a more difficult question. The propounded document has every earmark in form and substance of a will, even to declaring that it is a last will and testament and to naming an executor and his successor, but lacks the signature of a maker, witnesses, and the required attestation clause; it was kept in a small tin box in the home of Mr. and Mrs. Campbell, was unmutilated at the time of her death, and there, under Mr. Campbell's direction, was mutilated by O'Brien within a week or ten days after her death. This evidently intentional act destroyed every vestige of evidence from which it could have been made clear from the document itself whether it was or was not executed in due form and whether it was or was not the last will and testament of Mrs. Campbell. The document being in form and content evidently intended for a will; and having been kept in the home of Mrs. Campbell; and having been destroyed by him, who by reason of marital rights and the nature of the provisions made for him in the document itself,

■

306

would have been benefited in a pecuniary way by its destruction, every intendment and inference of fact shall be indulged against such despoiler. *Orr* v. *Clark,* 62 Vt. 136, 142, 145, 19 Atl. 929; *Arbuckle* v. *Templeton,* 65 Vt. 205, 211, 25 Atl. 1095; *Patch Mfg. Co.* v. *Protection Lodge, supra; Gomez & Co.* v. *Hartwell,* 97 Vt. 147, 152, 122 Atl. 461; *In re Campbell's Will, supra;* Wigmore on Evidence, §§ 291 (a), 2524.

The law so abhors the act of an intentional despoiler for gain that all sorts of inferences of fact in *odium spoliatoris* may arise from the act. *Betts* v. *Jackson,* 6 Wend. (N. Y.) 173, 181. The inference of fact is perfectly legitimate. It is so natural and so just that it is a part of every civilized code (*Bryant* v. *Stillwell,* 24 Pa. 314), and should be applied to this case. Broom's Legal Maxims, 576; *Hudson* v. *Hudson,* 287 Ill. 286, 122 N. E. 497, 502; *Anderson* v. *Irwin,* 101 Ill. 410.

In the instant case there was evidence tending affirmatively to show that there was a will. The testimony was, "He (Mr. Campbell) said there was a will." When he said "will" he no doubt meant a real one, executed with all due formality.

The ultimate fact sought to be proved was that the document in question was the last will and testament of Mrs. Campbell duly executed by her, and not necessarily that it was the will which the evidence otherwise tended to show was originally drawn in O'Brien's office. So it is hardly true to say that there was no evidence of any other will having been in existence after 1922. The document itself says it is her *last* will. If this be true, and, if in fact the original of the O'Brien will was destroyed, the propounded document must have been later than the O'Brien will. It was in existence unmutilated and in the possession of Mrs. Campbell on the date of her death in 1926. From it, had Campbell not destroyed it, the date would have appeared, so in support of the evidence that there was a will the inference is that it was later than 1922.

In this view there was no error, and this exception to the charge is not sustained.

*Decree affirmed. To be certified to the probate court.*